## COMMONWEALTH *vs.* JOSIAH PERRY.

Worcester.    September 28, 1891. — December 1, 1891.

Present : ALLEN, HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Constitutional Law* — *Contract of Employment* — *Weaving Fines* — *Withholding Wages* — *Indictment.*

The St. of 1891, c. 125, § 1, which provides that no employer shall impose a fine upon an employee engaged at weaving, or withhold his wages in whole or part "for imperfections that may arise during the process of weaving," is in conflict with the Constitution of this Commonwealth, in forbidding the employer to withhold any part of the contract price from such weaver upon his doing the work improperly, and in requiring such an employer to pay the same price for inferior work as for good work, and particularly with the first article of the Declaration of Rights, which secures to all the right "of acquiring, possessing, and protecting property." (HOLMES, J. dissenting )

*It seems* that an indictment on the St. of 1891, c. 125, is sufficient, which alleges in the first of two counts that the defendant on a certain date did "impose and exact a fine, to wit, a fine of forty cents," upon a weaver employed by him in his factory "for imperfections " in the cloth woven by him in the course of his employment, and in the second count that the defendant at the same time and place did "withhold a certain part of the wages " of such weaver while so employed, "to wit, the sum of forty cents," for and on account of imperfections as set out in the first count.

INDICTMENT, on the St. of 1891, c. 125, in two counts, alleging in the first count that the defendant on July 13, 1891, did "impose and exact a fine, to wit, a fine of forty cents," upon one Fielding, then employed by him in his factory in Dudley in weaving woollen cloth, " for imperfections that had arisen during the process of weaving in the cloth and material woven by the said " Fielding, while he was so employed and engaged at weaving; and in the second count that the defendant at the same time and place did " withhold a certain part of the wages of said " Fielding while so employed and engaged, " to wit, the sum of forty cents for and on account of imperfections " in the weaving of Fielding, as set out in the first count.

In the Superior Court, before the jury were impanelled, the defendant moved to quash the indictment for the following reasons :

" 1. Because the words ' did impose and exact a fine,' as alleged in the first count of said indictment, do not legally and

correctly describe any punishable offence described in the provisions of chapter 125 of the acts of the Legislature of 1891.

" 2. Because the said words are not, in import and substance, the same as those stated in said act, but do in fact constitute the substance of the charge alleged in the said first count, and describe the identity of that which is essential to such charge, so that no words or part of the words of said allegation can be rejected as surplusage.

" 3. Because, if by the provisions of said act it is one offence to impose a fine, and another offence to withhold wages, or any part thereof, then the said words of said count describe two separate and distinct offences, and the said count is defective and bad in law for duplicity.

" 4. Because the second count does not set out, or allege and describe, legally and fully, as required by law, any punishable offence under or described in the provisions of said act.

" 5. Because, obviously, each of the said counts in the said indictment relate to one and the same act of the defendant, neither one of which counts fully and legally describes any punishable offence under said act, as required by law ; and because the said indictment moreover contains no averment that the said several counts describe the same act of the defendant.

" 6. Because the only offence punishable or described in the said act, or provided therein, is, in substance, the imposing of a fine for imperfections that arise in the process of weaving, and the withholding of the wages of the employee therefor, which is not charged in this indictment against this defendant in either count thereof."

*Thompson,* J. overruled this motion.

At the trial the following facts were agreed. The defendant is a woollen manufacturer in the town of Dudley, and employed among other operatives about forty weavers. On May 18, 1891, the defendant entered into an agreement in writing under seal with such weavers, whereby, in consideration of the defendant's employing them and paying them their wages monthly at certain fixed rates, they agreed among other things to accept his employment and serve him faithfully during such employment, and to accept as wages " for all imperfect weaving work such reduced rates and prices, and at such rates and prices less than

those paid for perfect work, as the said Perry shall deem reasonable and proper compensation for imperfections in weaving, or imperfect work, and a fair compensation for the work actually done," and "to pay to said Perry monthly, from the wages earned in his employ in weaving, the amount of such deductions for imperfect work and imperfections as said Perry on inspection shall find and judge due him for the damage, loss, and injury caused by such imperfect weaving, or imperfections, — whether such deductions be called 'fines,' 'deductions,' or be called by any other name, — which damage, fines, or deductions for such imperfect weaving and imperfections are hereby assumed, and covenanted and promised to be paid to said Perry from wages earned in said employment, as compensation for the loss and injury caused to said Perry thereby." Among the weavers signing this agreement with the defendant was the Fielding referred to in the indictment, and he had remained in the defendant's employ continuously since the date of the agreement. The wages earned by Fielding in June, 1891, would have amounted to $21.53, if the cloth woven by him had been free from imperfections, but by reason of such imperfections, which arose during the process of weaving and which injured its merchantable value, the defendant deducted therefrom and withheld from him the sum of fifteen cents and paid him for his work the balance of $21.38. This balance was a reasonable compensation for the work actually done by Fielding during that month, and the fifteen cents so deducted did not represent the actual damage done to the defendant by the imperfect work done by him.

The defendant requested the judge to rule, among other things, as follows: "Chapter 125 of the acts of the Legislature of the year 1891, under the provisions of which the defendant was indicted, is unconstitutional and void, especially because it is in violation of the provisions thereof against granting special advantages to a class of the people as distinguished or distinct from the community, and because also it is repugnant to other fundamental principles thereof."

The judge refused so to rule, and instructed the jury, as matter of law, that, upon the agreed facts, the jury would be authorized to find the defendant guilty, and submitted the case to them.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*A. J. Bartholomew*, for the defendant.

*A. E. Pillsbury*, Attorney General, for the Commonwealth.

KNOWLTON, J.   This is an indictment under the St. of 1891, c. 125, the first section of which is as follows: " No employer shall impose a fine upon or withhold the wages or any part of the wages of an employee engaged at weaving for imperfections that may arise during the process of weaving." Section 2 provides a punishment for a violation of the provisions of the statute by the imposition of a fine of not exceeding one hundred dollars for the first offence, and not exceeding three hundred dollars for the second or any subsequent offence.

The act recognizes the fact that imperfections may arise in weaving cloth, and it is evident that a common cause of such imperfections may be the negligence or want of skill of the weaver.   When an employer has contracted with his employee for the exercise of skill and care in tending looms, it forbids the withholding of any part of the contract price for non-performance of the contract, and seeks to compel the payment of the same price for work which in quality falls far short of the requirements of the contract as for that which is properly done. It does not purport to preclude the employer from bringing a suit for damages against the employee for a breach of the contract, but he must pay in the first instance the wages to which the employee would have been entitled if he had done such work as the contract called for.   It is obvious that a suit for damages against an employee for failure to do good work would be in most cases of no practical value to the employer, and   theoretical remedy of this sort does not justify a requirement that a party to such a contract shall pay the consideration for performance of it when it has not been performed.   The defendant contends that the statute is unconstitutional, and it becomes necessary to consider the question thus presented.

The employer is forbidden either to impose a fine or to withhold the wages or any part of them.   If the act went no further than to forbid the imposition of a fine by an employer for imperfect work, it might be sustained as within the legislative power conferred by the Constitution of this Commonwealth, in chap. 1,

sect. 1, art. 4, which authorizes the General Court " to make, ordain, and establish all manner of wholesome and reasonable orders, laws, statutes, and ordinances, directions and instructions, either with penalties or without, so as the same be not repugnant or contrary to this Constitution, as they shall judge to be for the good and welfare of this Commonwealth, and for the government and ordering thereof, and of the subjects of the same." It might well be held that, if the Legislature should determine it to be for the best interests of the people that a certain class of employees should not be permitted to subject themselves to an arbitrary imposition of a fine or penalty by their employer, it might pass a law to that effect. But when the attempt is to compel payment under a contract of the price for good work when only inferior work is done, a different question is .presented.

There are certain fundamental rights of every citizen which are recognized in the organic law of all our free American States. A statute which violates any of these rights is unconstitutional and void, even though the enactment of it is not expressly forbidden. Article 1 of the Declaration of Rights in the Constitution of Massachusetts enumerates among the natural, inalienable rights of men the right " of acquiring, possessing, and protecting property." Article 1, § 10, of the Constitution of the United States provides, among other things, that no State shall pass any " law impairing the obligation of contracts." The right to acquire, possess, and protect property includes the right to make reasonable contracts, which shall be under the protection of the law.

The manufacture of cloth is an important industry, essential to the welfare of the community. There is no reason why men should not be permitted to engage in it. Indeed, the statute before us recognizes it as a legitimate business, into which anybody may freely enter. The right to employ weavers, and to make proper contracts with them, is therefore protected by our Constitution ; and a statute which forbids the making of such contracts, or attempts to nullify them, or impair the obligation of them, violates fundamental principles of right which are expressly recognized in our Constitution. If the statute is held to permit a manufacturer to hire weavers, and agree to pay them a certain price per yard for weaving cloth with proper skill and

care, it renders the contract of no effect when it requires him, under a penalty, to pay the contract price if the employee does his work negligently and fails to perform his contract. For it is an essential element of such a contract that full payment is to be made only when the contract is performed. If it be held to forbid the making of such contracts, and to permit the hiring of weavers only upon terms that prompt payment shall be made of the price for good work, however badly their work may be done, and that the remedy of the employer for their derelictions shall be only by suits against them for damages, it is an interference with the right to make reasonable and proper contracts in conducting a legitimate business, which the Constitution guarantees to every one when it declares that he has a "natural, essential, and unalienable" right of "acquiring, possessing, and protecting property." Whichever interpretation be given to this part of the act, we are of opinion that it is unconstitutional; and inasmuch as the instructions of the judge permitted the jury to find the defendant guilty on the second count, a new trial must be granted.

We do not deem it important to consider the other exceptions taken by the defendant, further than to say that we are of opinion that the motion to quash was rightly overruled.

For cases supporting the view we have taken, and for a further discussion of the principles involved in the decision, see *Godcharles* v. *Wigeman*, 113 Penn. St. 431; *State* v. *Goodwill*, 33 W. Va. 179; *In re Jacobs*, 98 N. Y. 98; *People* v. *Marx*, 99 N. Y. 377; *People* v. *Gillson*, 109 N. Y. 389; *Millett* v. *People*, 117 Ill. 294.

*Exceptions sustained.**

---

* A similar decision was made on the same day in Bristol, in the case of COMMONWEALTH *vs.* POTOMSKA MILLS CORPORATION.

Indictment on the St. of 1891, c. 125, alleging that on May 22, 1891, the defendant, then employing Arthur W. Britton in weaving cloth for it at certain wages, "did then and there unlawfully withhold from him, the said Arthur W. Britton, a part of the wages due to him, the said Arthur W. Britton, from said Potomska Mills Corporation for said weaving, to wit, the sum of twenty-seven cents for imperfections, to wit, stains in and upon the cloth so woven by the said Arthur W. Britton, and which imperfections then and there arose during the process of weaving said cloth by the said Arthur W. Britton."

In the Superior Court, before the jury were impanelled, the defendant

HOLMES, J.  I have the misfortune to disagree with my brethren.  I have submitted my views to them at length, and, considering the importance of the question, feel bound to make public a brief statement, notwithstanding the respect and deference I feel for the judgment of those with whom I disagree.

In the first place, if the statute is unconstitutional, as construed by the majority, I think it should be construed more narrowly and literally, so as to save it.  Taking it literally, it is not infringed, and there is no withholding of wages, when the

---

moved to quash the indictment for the reasons, (1) that it did not appear that the defendant withheld any part of Britton's wages, because it was not alleged what his wages were nor what was due him nor what was paid him on the day in question by it for wages; (2) because it did not appear whether the cloth so stained was of any value or rendered wholly valueless thereby, nor that such stains were not due to Britton's misconduct; (5) "because it does not appear that said defendant withheld payment of wages due the said Britton for weaving for imperfections that arose during the process of weaving"; (6) "because it did not appear that before the statute in question the defendant had not, by a contract with said Britton, acquired the right to withhold the wages of said Britton for imperfections, or recoup from wages injuries caused by him to the cloth"; (7) "because it is not constitutional to make this defendant a criminal for withholding pay for weaving which was of no value to it, and was of no value because of the fault and intention of the weaver"; (8) "because it is not constitutional to require this defendant to pay alike the faithful weaver for weaving good cloth and the vicious weaver who intentionally spoils cloth in weaving"; (9) "because chapter 125 of the acts of 1891 is unconstitutional."

*Braley*, J. overruled this motion.  At the trial, the government offered to prove in substance that the defendant on April 29, 1891, at which time Britton was in its employ as a weaver on cotton cloth, caused to be posted in the room where he worked a notice, then brought to his knowledge, to the effect that after May 11 following the price for weaving W. K. cloth would be "for first quality, $1.08; second quality, 54 cents"; that after that date Britton wove two cuts of W. K. cloth, and half of one of them, through his fault, was stained so as to injure its value; that for such stained half he was paid by the defendant half the amount allowed for the perfect half, or only twenty-seven cents, and was notified of the reason therefor at the time of such payment.

The defendant asked the judge to rule that upon these facts the indictment could not be maintained; but the judge declined so to rule, and submitted the case to the jury, and, after a verdict of guilty, reported the case for the determination of this court.

*L. LeB. Holmes & E. D. Stetson*, for the defendant.

*A. E. Pillsbury*, Attorney General, for the Commonwealth.

PER CURIAM.  This case is covered by *Commonwealth* v. *Perry, ante,* 117.

*Exceptions sustained.*

employer only promises to pay a reasonable price for imperfect work, or a price less than the price paid for perfect work, and does pay that price in fact. But I agree that the act should be construed more broadly, and should be taken to prohibit palpable evasions, because I am of opinion that even so construed it is constitutional, so far as any argument goes which I have heard. The prohibition, if any, must be found in the words of the Constitution, either expressed or implied upon a fair and historical construction. What words of the United States or State Constitution are relied on? The statute cannot be said to impair the obligation of contracts made after it went into effect. *Lehigh Water Co.* v. *Easton,* 121 U. S. 388, 391. So far as has been pointed out to me, I do not see that it interferes with the right of acquiring, possessing, and protecting property any more than the laws against usury or gaming. In truth, I do not think that that clause of the Bill of Rights has any application. It might be urged, perhaps, that the power to make reasonable laws impliedly prohibits the making of unreasonable ones, and that this law is unreasonable. If I assume that this construction of the Constitution is correct, and that, speaking as a political economist, I should agree in condemning the law, still I should not be willing or think myself authorized to overturn legislation on that ground, unless I thought that an honest difference of opinion was impossible, or pretty nearly so.

But if the statute did no more than to abolish in certain cases contracts for a *quantum meruit,* and recoupment for defective quality not amounting to a failure of consideration, I suppose that it only would put an end to what are, relatively speaking, innovations in the common law, and I know of nothing to hinder it. This, however, is not all. I do not confine myself to technical considerations. I suppose that this act was passed because the operatives, or some of them, thought that they were often cheated out of a part of their wages under a false pretence that the work done by them was imperfect, and persuaded the Legislature that their view was true. If their view was true, I cannot doubt that the Legislature had the right to deprive the employers of an honest tool which they were using for a dishonest purpose, and I cannot pronounce the legislation void, as based on a false assumption, since I know nothing about the

matter one way or the other. The statute, however construed, leaves the employers their remedy for imperfect work by action. I doubt if we are at liberty to consider the objection that this remedy is practically worthless; but if we are, then the same objection is equally true, although for different reasons, if the workmen are left to their remedy against their employers for wages wrongfully withheld. My view seems to me to be favored by *Hancock* v. *Yaden*, 121 Ind. 366, and *Slaughter-House Cases*, 16 Wall. 36, 80, 81.