## WHEELING BRIDGE AND TERMINAL RY. CO. v. AMZY B. GILMORE.

**1. THE TEN-HOUR DAY ACT IS UNCONSTITUTIONAL.**

The act of April 15, 1892 (89 O. L., 311), which declares that ten hours shall constitute a day's work, and that the employees therein named shall be paid for every hour in excess of ten which they shall be required or permitted to work, in addition to their *per diem*, is in conflict with sections 1 and 19 of article I, of the constitution of Ohio, in that it fails to allow persons to contract for a longer day's work, if they wish to do so.

**2. PRIVATE CORPORATIONS ARE REGARDED AS PERSONS WITHIN CONSTITUTIONAL PROVISIONS.**

Private corporations are regarded generally as persons within the meaning of these constitutional provisions, and are endowed with the constitutional right of acquiring, possessing and protecting property, within the limits of their charter, the same as natural persons; and are entitled to the equal protection.

**3. RAILROAD COMPANIES, AS REGARDS THE ABOVE, ARE ENTITLED TO THE SAME PROTECTION.**

While railroad companies have public duties to perform, that the state may regulate and enforce, and over whose business the state may exercise such control as lies within the police power; yet beyond this, the state cannot interfere with the dealings and contracts of such companies with their employees, who are *sui juris*, any farther than it lawfully can with those of other employers of labor.

4. THE POLICE POWER OF THE STATE DOES NOT EXTEND TO TEN-HOUR LAW.

The police power of the state legitimately extends only to matters affecting the public welfare, the health, safety and morals of the community.

5. CONTRACT TO WORK FOR A CERTAIN SUM PER MONTH, KNOWING THAT EXTRA TIME WOULD BE REQUIRED, PREVENTS RECOVERY.

If a telegraph operator enters the service of a railroad company, under a contract to work for $55.00 per month, with the knowledge that he will be required to work fourteen hours a day, and on Sundays, and he continues in such employment and performs services as such operator accordingly, and receives his pay monthly without objection, and without informing such company that he expected pay for services rendered over and above ten hours a day, or on Sundays, he cannot afterwards recover of such company additional compensation for such services.

ERROR to the Court of Common Pleas of Belmont county.

LAUBIE, J.

This is a proceeding brought to reverse a judgment of the court of common pleas, recovered by Gilmore against the company, for compensation for extra services performed by him as its telegraph operator at Martin's Ferry, in this county, in working more than ten hours a day, which he claimed to be due him under and by virtue of the provisions of the act of March 26, 1890, (87 O. L., 112), as amended April 23, 1891, (88 O. L., 344) and April 15, 1892 (89 O. L., 311).

The petition of the plaintiff alleges that The Wheeling Bridge and Terminal Railway Company is a corporation of the state of West Virginia, and that it owns and operates a railroad from West Virginia to and back of the city of Martin's Ferry, in this county.

That, about February 1, 1892, plaintiff was employed by that company as a telegraph operator at their station in Martin's Ferry, Ohio, to do all necessary telegraph work at that station at $55.00 per month. That he continued in such employment, entering upon his duties at 6 o'clock in the morning, and continuing until 8 o'clock P. M., of each secular day, until July 24, 1892; and that on that day his hours of service changed to 5 o'clock in the morning until 7 o'clock in the evening, and so continued until June 27, 1893.

That during all this time, by direction of the superintendent, he was also employed as such operator for seventy-four Sundays.

That this company was running its road in connection with the Wheeling & Lake Erie Railway, and the Cleveland, Lorain & Wheeling Railroad, through parts of this state, for a distance of more than one hundred miles.

That he was compelled to work, and did work, four hours over-time on each and every secular day during the continuance of his employment.

That no payment or settlement for such extra work has been made in any manner whatever.

He further alleges in the petition that it was the origina understanding that, as the business of the company increased, his wages were to be increased accordingly, but that no increase was ever made.

To this petition defendant for answer admits its corporate character, and the operation of its road from Wheeling, West Virginia, to and through the city of Martin's Ferry, in Belmont county, Ohio, and alleges that its road is less than thirty miles in length.

It alleges that it did, in the time mentioned in the petition, employ the plaintiff as ticket agent and operator at its station in Martin's Ferry, and was to pay him therefor at the rate of $55.00 per month. That he worked during the time named in the petition, and that he had been paid and accepted in full payment for his services, $55.00 per month. It denies that it operated its road in connection with the W. & L. E. Ry., or the C., L. & W. R. R.

To this there is a reply denying that the plaintiff had accepted and received in full for his services, monthly, $55,00; or that said $55.00, or any part of it, was received by him in consideration for said over-time and said Sunday work. He admits that he acted as ticket agent as incident to his employment as telegraph

operator, but alleges that the same took but a small part of his time, and that his time was generally taken up in attending to the telegraph work; that he was specially employed to do the telegraph work at such station.

The first section of the statute under which this action is brought (the provision in question here being the same in each of said amendatory acts), is as follows:

"Section 1. *Be it enacted by the General Assembly of the State of Ohio*, That section 1, of an act entitled 'An act to provide against accidents on railroads. and to limit the hours of service,' be amended so as to read as follows : 'That any company operating a railroad over thirty·miles in length, in whole or in part, within the state, shall not permit or require any conductor, brakeman, engineer or fireman, on any train, or any telegraph operator, who have worked in their respective capacities for twenty-four consecutive hours, to again be required to go on duty or perform any work, until they have had at least eight hours' rest. Ten hours shall constitute a day's work, and for every hour that any conductor, fireman, engineer, brakeman, or any trainman, or any telegraph operator of any company, who works under direction of a superior, or at the request of the company, shall be paid for such extra services in addition to his *per diem*.' "

The words "in excess of said ten hours' work," after the words "and for every hour," and the words "shall be required or permitted to work, he," after the words "or at the request of. the company," in the original section (87 O. L., 112), by some inadvertence, are not in the amendatory sections. It is evident, however, that the legislature intended to re-enact the provision without change, and as the plaintiff in error makes no question over the omission, we treat the question just the same as if the words were in such amendatory sections.

The second section makes violation of any of the provisions of the first section a criminal offense, and provides a punishment. Under this act this action was prosecuted, and a recovery had, and it was by·virtue of the provisions of the act alone that the plaintiff was entitled to recover. I say this because there is no allegation in the petition, nor evidence in the case, of an agreement or understanding between the parties that ten hours were to constitute a day's work, and that plaintiff should be paid extra for over-time or for Sundays. Indeed, the evidence in the case shows just the contrary; that the arrangement between the parties was that he was to fulfill the duties of a ticket and freight agent at this station, as well as telegraph operator, during the hours necessary for such work, and when the trains of the company were running, to-wit: during the hours named in his petition. He himself testified that it was necessary for him to be there as ticket agent between those hours, but that it was more especially his duty to be there as telegraph operator, and at the instrument, to take such orders as might come.

In his application for the position by letter, which is copied in the bill of exceptions, he stated to the company that he had ten years' experience as a telegraph operator and ticket and freight agent on railroads; and he testified that he did this work because he was required to do it, and because he wanted to retain the situation, his bread and butter substantially being at stake, and that he knew when he entered the service what would be required of him.

He also testified that he never made any claim of pay for over-work, nor for Sundays; all that he ever did was to address a communication to the superintendent, reminding him of his promise that when the business increased his pay should be increased, and asking to have his monthly pay increased; but that was refused, and he continued in the employment. There was no objection upon his part to perform the labor as required, and he received his pay monthly, without any intimation to the company that he expected the company to pay him for over-work or over-time.

So that the whole question turns upon the effect of this statute, whether he is entitled, by virtue of its provisions, to recover pay for work performed for the company exceeding ten hours a day. It does not involve the right of the legislature to impose upon a foreign corporation conditions to the right of doing business in the state.

Now, if this statute is valid, if it is a law that is to be enforced by the courts of this state, its effect is directly as claimed in this case, and would justify the recovery that was had in the court below for the reason that its language is absolute and positive that ten hours a day shall constitute a day's work, and that for every hour over and above ten that a telegraph operator shall work for any such company, under the direction of a superior, or at the request of the company, he shall be paid for such extra services in addition to his *per diem.*

The language of the act being plain, unequivocal and absolute, it over-reaches, if it is valid, the contract made between the parties, and annuls every provision of such contract which is contrary thereto, if the parties come within its provisions, which, for the purposes of this hearing, is conceded.

The important question before us is: Whether power is vested in the general assembly to control citizens in the making of their contracts by prohibiting contracts for a day's work of more than ten hours, or to confer upon the employee, the right to deprive the employer of the benefit of contracts they may have voluntarily entered into with reference to the hours of labor, and the compensation for a day's work.

The law is far-reaching in its effect if it is valid, and it is highly important that those who are interested, who are brought within the purview of the act, should know whether it is a valid enactment or not; and for the first time in this state, so far as we are aware, the question is brought up for disposition.

Is, then, this statute constitutional? Statutes may be, and they sometimes are, held to be unconstitutional, although they contravene no express word of the constitution. Where they strike at the inalienable rights of the citizen, so as to infringe the spirit of the instrument, though not its letter, they are often-times held to be unconstitutional.

In this instance, in our opinion, this act infringes directly both the spirit and the letter of the Constitution.

Section 1, of the Bill of Rights, reads:

Section 1. "(Right to freedom and protection of property.) All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety."

And sec. 19 of the same article declares that "private property shall ever be held inviolate;" and under the United States Constitution, as well as that of our own state, no person can be denied the equal protection of the laws, or be deprived of his property, against his consent, without due process of law, nor can it be taken from him, even for a public use, without compensation. Private corporations are regarded as persons within the meaning of these constitutional provisions and guarantees. 25 Am. S. R., 873, note, and cases cited. Indeed, a private corporation is an association of persons doing business under a general name, an entity by legal fiction, incapable of action save by and through its members; and which fiction, it is said, has outlived its usefulness, and cannot now be used as a shield against responsibility for violations of corporate duties brought about by the separate action of its stockholders. *State* v. *Oil Co.*, 49 O. S., 137. And, *a fortiori*, it should not be used as a weapon to impair the constitutional rights of property of innocent stockholders; and when, in their corporate capacity, such persons are legally chartered and authorized to engage in business, they are endowed, under such assumed name, with the constitutional right of acquiring, possessing and protecting property, within the limits of their charter, the same as all natural persons.

While corporations, like the plaintiff in error, have public duties to perform that the state may regulate by proper laws, and over whose business it may exercise such control as lies within the police power of the state, such, for instance, as is contained in the first sentence of section 1 of the act in question,

yet beyond this the state cannot interfere with the dealings and contracts of such companies with their employees who are *sui juris*, any farther than it lawfully can with those of other employers of labor.

The police power of the state extends to matters only affecting the public welfare, the health, safety and morals of the community.

The liberty of making contracts is absolutely essential to the acquisition, possession and protection of property. 25 Am. S. R., note 881.

The doctrine is generally recognized and enforced, that every person living under the protection of the general government has the right to follow such occupation or industrial pursuit as to him seems fit, provided it is not injurious to the morals, health, safety or welfare of the public; and such persons generally are entitled to the equal protection of the laws in respect to person and property; and as incident thereto, the right to employ labor, make contracts in regard thereto upon such terms as may be agreed upon by the parties, and to enforce such contracts when made. *Ex parte* Kuback, 85 Cal., 274; s. c., 20 Am. S. R., 226; *Commonwealth* v. *Perry*, 155 Mass., 117; *State* v. *Goodwell*, 33 West Va., 179; s. c., 25 Am. S. Rep.,863, and note following, in which the cases generally are cited. *State* v. *F., C., C. & C. Co.*, 33 West Va., 188; s. c., 25 Am. S. Rep., 891. And the same is true of private corporations, with respect to the business they are chartered to engage in.

A person may, therefore, lawfully acquire property by his own labor, or by contract from the labor of others; and, within the limits and restrictions mentioned, no state can prevent him.

In the case at bar, we have a company attempting to lawfully acquire property through the labor of others—making profit out of the labor of its employees, as well as out of its equipment and materials. Its equipment and materials are nothing if it has no servants to perform service for the public; so that the servant enters largely into the question of profits and the acquisitions of property by the company.

It has the right to make contracts with its employees, who are *sui juris*, in such way as that it may profit from their labor, and on such terms as they can mutually agree upon, not contrary to public policy or the police laws of the state.

The claim here is, in substance, not that the contract actually made in and of itself is unreasonable, but that it is made unreasonable because absolutely prohibited.

We may concede the right of the legislature to prohibit unreasonable contracts, yet it would be for the courts to determine whether the contracts were unreasonable in fact, but the power to declare what contracts are reasonable, and what unreasonable, or, to prohibit absolutely, such as did not meet with the approval of that body, is an essentially different affair; and if that power was vested in the legislature, it would be without limit, and the judicial department could not interfere. That would be despotism pure and simple. Questions of power do not depend on the degree to which it may be exercised. If it may be exercised at all, it must be exercised at the will of the body in whom the power is vested.

We do not doubt the authority of the legislature to forbid a railroad company from requiring any of its servants engaged in running its trains upon the road, or telegraph operators in active duty at its stations, who have worked in their respective capacities for twenty-four consecutive hours, to again go on duty until they have had at least eight hours' rest, as that would be a wise police regulation; nor have we reason to doubt the constitutionality of statutes prohibiting the employment of minors under eighteen years of age, and women in certain employments for more than ten hours per day; and if the act under consideration provided that ten hours a day should constitute a day's work, unless otherwise agreed, as in sec. 4365, Rev. Stat., no question could be made of its constitutionality, as then the liberty to contract would be reserved to the parties. But the absolute prohibition in this act is of that paternal class of legislation, and

legislation for a class, that destroys alike all the constitutional guaranties of liberty of action, the security of property, and the equal protection of the laws—an infringement at once of the rights of the employee as well as those of the employer. To annul such right and compel the company to pay more than the stipulated price per day after performance of the work and payment according to the contract, is not only a direct infringement of the constitutional right of acquiring property, but equally is it an infringement of the right to possess and protect property, of the guaranty of its inviolability and its security against appropriation to another's use without compensation.

The plaintiff, Gilmore, agreed to work for the company fourteen hours a day, for the sum of $55.00 per month, and if the act in question renders that contract void, and compels the company to pay him, in addition to the $55.00 per month already paid, a compensation measured by a day's work of ten hours, for every four hours over-work daily, it is simply taking money out of the pocket of the employer and putting it into that of the employee—appropriating its property and giving it to another without compensation, and, in every just sense, without due process of law.

In *ex parte* Kuback, *supra*, it was held:

"A municipal ordinance making it a misdemeanor for any person, when having labor performed for the purpose of carrying out a contract with the city, to demand, receive or contract for more than eight hours' work in one day, from any one person, is void"; that "the right of every person to pursue any lawful calling, without let or hindrance, cannot be secured without permitting every person who wishes employment to seek it, and to leave all persons free to accept the services of others on such terms, as may be agreed upon by them," and that "we cannot conceive of any theory upon which a city could be justified in making it a misdemeanor for one of its citizens to contract with another for services to be rendered because the contract is that he shall work more than a limited number of hours per day."

In *Collins* v. *U. S.*, 24 C. T. C. L.,320, it was held that a night-watchman in a government mint, where the custom was for watchmen to serve twelve hours, was not entitled to extra pay, notwithstanding sec. 3499, United States Rev. Stat., provided that eight hours should constitute a day's work, for laborers employed by the government, with over-pay for extra hours.

To the same effect is the decision of the Supreme Court of the United States, construing a similar act in *U. S.* v. *Martin*, 94 U. S. R., 400. In that case a laborer employed by the day worked twelve hours per day, and in answer to his request for extra pay was told that he must continue to work twelve hours a day if he remained; and it was held he was not entitled to extra pay when he continued to work twelve hours per day, and received his pay accordingly.

In *Commonwealth* v. *Perry*, *supra*, the syllabus is as follows:

"A statute forbidding an employer to impose a fine upon, or to withhold wages from, an employee engaged in weaving, for any imperfections in the weaving, is in violation of the constitutional provision, which enumerates among the natural and inalienable rights of men the right of acquiring, possessing and protecting property, as this right includes the right to make reasonable contracts which shall be under the protection of the law." Knowlton, J., says:

"There are certain fundamental rights of every citizen which are recognized in the organic law of all our free American states. A statute which violates any of these rights is unconstitutional and void, even though the enactment of it is not expressly forbidden. Article 1 of the Declaration of Rights of the Constitution of Massachusetts enumerates, among the natural, inalienable rights of men, the right of acquiring, possessing and protecting property. * * * The right to acquire, possess and protect property includes the right to make reasonable contracts, which shall be under the protection of the law. * * * The right to employ weavers, and to make proper contracts with them, is therefore protected by our constitution; and a statute which forbids the making of such contracts, or attempts to nullify them, or impair the obligation of them, violates fundamental principles of right, which are expressly recognized in our constitution. * * * If it (the statute) be held to forbid the making of such contracts and permit the hiring of weavers only upon terms that prompt payment shall be made of the price for good work, however badly their work may be done, and that the remedy of their employer for their derelictions shall be only by suits against them for damages, it is an interference with the right to make reasonable and proper contracts in conducting a legitimate business, which the constitution guarantees to every one

when it declares he has a 'natural and inalienable right' of acquiring, possessing and protecting property.'"

Recently the Supreme Court of this state had before them the question of the constitutionality of the act found in secs. 8035 to 8037, Rev. Stat, which provides:

"That every incorporated, manufacturing, mining, mercantile, street railroad, telegraph' telephone, express, water companies and construction companies, or contractors building railroads, shall pay, in lawful money, or by check or draft, or order payable in lawful money, at sight or on demand, on a bank located at a distance of not greater than eight miles from where said labor was performed, twice in each month, each and every employee engaged in its business, the wages earned by such employees, to within ten days of the date of said payment; provided, however, that if at any time of payment any employee shall be absent from his regular place of labor, he shall be entitled to said payment at any time thereafter, during the regular business hours, upon demand; and provided, further, that said employer may retain at each payment, any amount said employee may order withheld from his or her wages for rent, powder, tools, tool-sharpening, or oil due said employer."

The succeeding section makes it criminal for any employer to violate the provisions of the preceding section.

The Lake Erie Iron Co. was indicted under this statute for refusing to comply with its provisions in not paying its servants semi-monthly; a demurrer was filed to the indictment, and it was sustained on the ground of the unconstitutionality of the act; and on error the Supreme Court held that the demurrer was rightfully sustained to the indictment, upon the ground, as we understand, although the opinion has not yet been published, that the statute is contrary to the provisions of the Constitution, in that it infringes the right of parties to make reasonable contracts in the managemnt of their own business.

Now, if an act which requires a corporation to pay its servants twice a month is unconstitutional by reason of interference with the private rights of parties, so ought the act before us to be unconstitutional, which absolutely overrides and annuls any contract which the employer may make as to the hours of labor, and compels him, notwithstanding his contract, to pay his servants for all labor over ten hours per day. If the one is unconstitutional, certainly so is the other.

So far as the first part of the act is concerned, which prohibits a company from allowing its servants, who have already performed labor for the length of time specified in the act, to again go upon duty until they have had eight hours' rest, as amended April 15, 1892, we have already said that the legislature had full right and authority to pass that as a police regulation, and so far as that is concerned, we think the legislature would still have passed it, notwithstanding it did not have the right to pass the subsequent provision providing what should constitute a day's work; therefore, it is only this latter provision of the act that we declare unconstitutional.

The judgment will be reversed, and the judgment entered here that should have been entered below, dismissing the petition.

*Geo. Duncan*, for plaintiff in error.

*W. C. Boyd* and *W. B. Francis*, for defendant in error.