## Opinion of the Justices to the House of Representatives.

In the opinions of the Justices, rendered under c. 3, art. 2 of the Constitution, a proposed act "declaring provisions in contracts of employment whereby either party undertakes not to join, become or remain a member of a labor union, or of any organization of employers, or undertakes in such event to withdraw from the contract of employment, to be against public policy and void," if such act were enacted into law, would be in conflict with the Constitution of the United States and of this Commonwealth.

On April 4, 1930, the House of Representatives adopted the following order:

WHEREAS, There is pending before the General Court a bill entitled "An Act declaring provisions in contracts of employment whereby either party undertakes not to join, become or remain a member of a labor union, or of any organization of employers, or undertakes in such event to withdraw from the contract of employment, to be against public policy and void", printed as House document No. 299 of the current year, a copy of which is herewith submitted; and

WHEREAS, Doubt exists as to the constitutionality of said bill, if enacted into law; therefore be it

ORDERED, That the opinions of the Honorable the Justices of the Supreme Judicial Court be required by the House of Representatives on the following important question of law:

Would the provisions of said bill, if enacted into law, be in conflict with the Constitution of this Commonwealth or of the United States?

The order was transmitted to the Justices on April 8, 1930, and on April 15, 1930, they returned the following answer:

To The Honorable the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court have considered the order adopted on April 4, 1930, and transmitted to them on April 8, 1930, requiring their opinion on the question whether the provisions of the bill printed as House document No. 299, if enacted into law, would be in conflict with the Constitution of this Commonwealth or of the United States. Copy of the order is hereto annexed. The proposed bill is adequately described in its title in substance as an act declaring provisions in contracts of employment whereby either party undertakes not to join, become or remain a member of a labor union, or of any organization of employers, or undertakes in such event to withdraw from the contract of employment, to be against public policy and void.

A contract similar to those described in the proposed bill was assailed and its validity was under consideration in *Hitchman Coal & Coke Co.* v. *Mitchell*, 245 U. S. 229. It there was said at pages 250, 251: "That the plaintiff was acting within its lawful rights in employing its men only upon terms of continuing non-membership in the United Mine Workers of America is not open to question. Plaintiff's repeated costly experiences of strikes and other interferences while attempting to 'run union' were a sufficient explanation of its resolve to run 'non-union,' if any were needed. But neither explanation nor justification is needed. Whatever may be the advantages of 'collective bargaining,' it is not bargaining at all, in any just sense, unless it is voluntary on both sides. The same liberty which enables men to form unions, and through the union to enter into agreements with employers willing to agree, entitles other men to remain independent of the union and other employers to agree with them to employ no man who owes any allegiance or obligation to the union. In the latter case, as in the former, the parties are entitled to be protected by the law in the enjoyment of the benefits of any lawful agreement they may make. This court repeatedly has held that the

employer is as free to make non-membership in a union a condition of employment, as the working man is free to join the union, and that this is a part of the constitutional rights of personal liberty and private property, not to be taken away even by legislation, unless through some proper exercise of the paramount police power." It is not necessary to consider whether the extent of the "paramount police power" in this connection can extend beyond provisions to secure that such contracts be free from coercion because it is plain that the proposed bill does not avoid insuperable difficulties now to be mentioned.

In *Adair* v. *United States*, 208 U. S. 161, an act of Congress was attacked whereby a penalty was imposed upon an employer of labor for making a contract of the same general nature as those described in the proposed bill or for discharging an employee because of membership in a labor union, the acts thus denounced being declared misdemeanors. It was held in an exhaustive opinion that the act was violative of the provisions of the Fifth Amendment to the Federal Constitution forbidding Congress to enact any law depriving a person of liberty or property without due process of law. In *Coppage* v. *Kansas*, 236 U. S. 1, the main point for consideration was the validity of a statute of Kansas declaring it a misdemeanor for an employer to make a contract indistinguishable in its essential features from those described in the proposed bill. It was held after elaborate discussion and review of decided cases that the statute was repugnant to the guaranties contained in the Fourteenth Amendment to the Constitution of the United States. It there was said at page 14: "The principle is fundamental and vital. Included in the right of personal liberty and the right of private property — partaking of the nature of each — is the right to make contracts for the acquisition of property. Chief among such contracts is that of personal employment, by which labor and other services are exchanged for money or other forms of property. If this right be struck down or arbitrarily interfered with, there is a substantial impairment of liberty in the long-established constitutional sense. The right is as essential to the laborer

as to the capitalist, to the poor as to the rich; for the vast majority of persons have no other honest way to begin to acquire property, save by working for money." The decision in the *Coppage* case but followed and reaffirmed *Adair* v. *United States*, 208 U. S. 161. To the same general effect is the decision in *Adkins* v. *Children's Hospital*, 261 U. S. 525, 545, 546. Those decisions, of course, are binding upon the several States as to the force and effect of the Federal Constitution touching a statute like that in the proposed bill.

The principles thus declared by the Supreme Court of the United States prevail in this Commonwealth. The provisions of arts. 1, 10 and 12 of the Declaration of Rights of the Constitution of this Commonwealth are as strong in protection of individual rights and freedom as those of the Fifth and Fourteenth Amendments to the Constitution of the United States. It was said in *Commonwealth* v. *Perry*, 155 Mass. 117, 121: "The right to acquire, possess, and protect property includes the right to make reasonable contracts, which shall be under the protection of the law." To the same general effect are *Opinion of the Justices*, 208 Mass. 619, *Rice, Barton & Fales Machine & Iron Foundry Co.* v. *Willard*, 242 Mass. 566, 572, *Moore Drop Forging Co.* v. *McCarthy*, 243 Mass. 554, and *A. T. Stearns Lumber Co.* v. *Howlett*, 260 Mass. 45, 60, 61. The *Adair* and *Coppage* cases have been recognized and followed in *Opinion of the Justices*, 220 Mass. 627, 630, *Bogni* v. *Perotti*, 224 Mass. 152, 155, and *Opinion of the Justices*, 267 Mass. 607, 611. The views expressed in these several opinions and decisions, which need not be further amplified, are decisive of the question here propounded. There is a wide field for the valid regulation of freedom of contract in the exercise of the police power in the interests of the public health, the public safety or the public morals and in a certain restricted sense of the public welfare. A somewhat extended collection of references to such statutes and a review of relevant decisions were made in *Holcombe* v. *Creamer*, 231 Mass. 99, 104–107. None of them go so far as to justify a statute like that in the proposed bill.

Guided by the decisions of binding authority already cited, we respectfully answer that in our opinion the provisions of the proposed bill, if enacted into law, would be in conflict with the Constitution of the United States and of this Commonwealth.

ARTHUR P. RUGG.
JOHN C. CROSBY.
EDWARD P. PIERCE.
JAMES B. CARROLL.
WILLIAM C. WAIT.
GEORGE A. SANDERSON.
FRED T. FIELD.