## OPINION OF THE JUSTICES TO THE HOUSE OF REPRESENTATIVES.

The justices of this court, whose opinions were asked by the House of Representatives on the question, whether the provisions of a proposed act of fourteen sections filling eleven printed pages, if enacted into law, would be in conflict with the Constitution of this Commonwealth or that of the United States, *stated* that it has not been regarded as within the fair intent of c. 3, art. 2, of the Constitution that the justices should be required to examine the validity of every clause, section or part of a complicated statute except in response to specific questions, and that such rule of conduct was not to be impaired in any degree; but they answered the question, assuming that the House desired no more than that the question be answered upon a general view of the proposed statute without scrutiny of its details.

In the opinions of the justices, rendered upon the question above described with relation to a bill entitled "An Act to define and limit the jurisdiction of courts sitting in equity, and for other purposes,"

(1) Provisions of the proposed act, declaring, in substance, that every contract between any present or prospective employee and

present or prospective employer or others whereby either party undertakes to join or not to join, or to remain or not to remain a member of any labor organization or employer organization or to withdraw from an employment relation in the event that he joins or remains a member of such organization is contrary to public policy and shall not be the basis of relief in the courts, and attempting to deprive the courts of jurisdiction to issue any injunction touching such contracts, would be violative of provisions of the Federal Constitution forbidding the enactment of any law depriving a person of liberty or property without due process of law;

(2) Further provisions of the proposed act, seeking to establish with respect to every "labor dispute" as defined therein a substantially different method of procedure, subject to materially different prerequisites, conditions, rules of trial, and extent of redress, from that established in any other kind of controversy where relief in equity is sought, would be unconstitutional as class legislation and an impairment of equality before the law and equal protection of equal laws to all persons;

(3) Still further provisions of the proposed act were unconstitutional in that they sought to narrow to too great an extent the power of courts to deal with contempt of court in connection with litigation in labor disputes.

On May 11, 1931, the House of Representatives adopted the following order:

WHEREAS, There is pending before the General Court a bill entitled "An Act to define and limit the jurisdiction of courts sitting in equity, and for other purposes", printed as House Document No. 976 of the current year, a copy of which is herewith submitted; and

WHEREAS, Doubt exists as to the constitutionality of said bill, if enacted into law; therefore be it

ORDERED, That the opinions of the Honorable the Justices of the Supreme Judicial Court be required by the House of Representatives on the following important question of law:

Would the provisions of said bill, if enacted into law, be in conflict with the Constitution of this Commonwealth or of the United States?

The proposed act was in fourteen sections filling eleven printed pages.

On May 29, 1931, the Justices returned the following answer:

To The Honorable the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court have considered the order adopted on May 11, 1931, and transmitted to them on May 13, 1931, requiring their opinion on the question whether the provisions of the bill printed as House document No. 976, if enacted into law, would be in conflict with the Constitution of the United States or of this Commonwealth. Copy of the order is hereto annexed.

It has been the practice of the Justices of the Supreme Judicial Court, in the performance of their duty under c. 3, art. 2, of the Constitution to render opinions, when required by the designated legislative or executive branch, upon "important questions of law, and upon solemn occasions," to confine their answers to particular questions of law submitted to them. It has not been regarded as within the fair intent of this article of the Constitution that they should be required to examine the validity of every clause, section or part of a complicated statute except in response to specific questions. *Opinion of the Justices*, 138 Mass. 601, 604; 145 Mass. 587, 592; 217 Mass. 607; 239 Mass. 606, 612; 247 Mass. 589, 598; 261 Mass. 523, 554; 261 Mass. 556, 613. We well might decline to answer the question here propounded on this ground. This rule of conduct is not to be impaired in any degree. We presume that the Honorable House of Representatives desires no more than that the question be answered upon a general view of the proposed statute without scrutiny of its details.

On such general view the proposed act appears to us to fall into three main divisions. The first is comprised in §§ 1–3 inclusive. The vital part of this division appears to be § 2. That section declares, in substance, that every contract between any present or prospective employee and present or prospective employer or others whereby either

party undertakes to join or not to join, or to remain or not to remain a member of, any labor organization or employer organization or to withdraw from an employment relation in the event that he joins or remains a member of such organization is contrary to public policy and shall not be the basis of relief in the courts. Main provisions of § 3 of the bill attempt to deprive the courts of jurisdiction to issue any injunction touching such contracts. This appears especially from subsections (a), (b), (g.) The provisions of § 1 declare the public policy of the Commonwealth to be in favor of full freedom of organization of workmen for collective bargaining and other purposes. The terms of that section are plainly broad enough to comprehend organization to break contracts made contrary to the terms of § 2, and although containing no definite reference to § 2 must be construed as designed to include the facts recited in § 2. These provisions would be unconstitutional. That is too clear for discussion. They fall within the condemnation of principles declared and stated at length in *Adair* v. *United States*, 208 U. S. 161, and *Coppage* v. *Kansas*, 236 U. S. 1. In the first of those decisions an act of Congress and in the second a statute of Kansas, indistinguishable in essential features from these sections of the present bill, were held to be violative of provisions of the Federal Constitution forbidding the enactment of any law depriving a person of liberty or property without due process of law. A decisive sentence from 236 U. S. 1, 14, is in these words: "Included in the right of personal liberty and the right of private property — partaking of the nature of each — is the right to make contracts for the acquisition of property. Chief among such contracts is that of personal employment, by which labor and other services are exchanged for money or other forms of property. If this right be struck down or arbitrarily interfered with, there is a substantial impairment of liberty in the long-established constitutional sense." These principles have been reiterated and these cases cited with approval in more recent decisions. *Truax* v. *Raich*, 239 U. S. 33, 41. *New York Central Railroad* v.

*White,* 243 U. S. 188, 206. *Hitchman Coal & Coke Co.* v. *Mitchell,* 245 U. S. 229, 250–251. *Prudential Ins. Co.* v. *Cheek,* 259 U. S. 530, 536. *Adkins* v. *Children's Hospital,* 261 U. S. 525, 545–546. *Highland* v. *Russell Car & Snow Plow Co.* 279 U. S. 253, 261. *Texas & New Orleans Railroad* v. *Brotherhood of Railway & Steamship Clerks,* 281 U. S. 548, 570. It would be vain for us to indulge in discussion in view of these authoritative adjudications. This matter also is fully covered by the *Opinion of the Justices* rendered to the Honorable the House of Representatives on April 15, 1930, 271 Mass. 598.

The second division of the bill comprehends §§ 4–9, both inclusive. It is possible that these sections are designed chiefly to be in aid of § 2 of the bill, and would not otherwise be proposed. However that may be, one dominating aim of this part of the bill seems to be to establish with respect to every "labor dispute" as defined in § 12 (c) a substantially different method of procedure, subject to materially different prerequisites, conditions, rules of trial, and extent of redress, from that established in any other kind of controversy where relief in equity is sought. This dominating purpose appears to be class legislation and to impair equality before the law and equal protection of equal laws to all persons, contrary to principles affirmed in *Bogni* v. *Perotti,* 224 Mass. 152, and *Truax* v. *Corrigan,* 257 U. S. 312.

The third division of the bill includes §§ 10–14, both inclusive. The dominating purpose of these sections is to narrow to an unconstitutional extent the power of courts to deal with contempt of court in connection with litigation in labor disputes. The effect of these sections would contravene principles laid down in *Walton Lunch Co.* v. *Kearney,* 236 Mass. 310, *Root* v. *MacDonald,* 260 Mass. 344, and *Blankenburg* v. *Commonwealth,* 260 Mass. 369. See *Blankenburg* v. *Commonwealth,* 272 Mass. 25.

In answering the question we have considered only a general view of the proposed bill. It has not been examined in detail with reference to the questions that might be raised as to its several parts. We do not undertake to in-

timate how much of the bill, if dissociated from the dominating factors already mentioned, would be within the competency of the General Court to enact. Those matters we cannot deal with for the reasons stated at the outset of this opinion.

ARTHUR P. RUGG
JOHN C. CROSBY
EDWARD P. PIERCE
JAMES B. CARROLL
WILLIAM C. WAIT
GEORGE A. SANDERSON
FRED T. FIELD