ATTORNEY GENERAL *vs.* PRUDENTIAL INSURANCE COMPANY
OF AMERICA.

Suffolk.    May 13, 1941. — January 30, 1942.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Insurance*, Agent, Commission. *Contract*, Validity. *Constitutional Law*,
Freedom of contract, Due process of law, Equal protection of laws,
Police power.

A provision in a contract of an insurance company with its "industrial"
agents that in the calculation of their "net first-year premiums"
they should not receive credit for any first-year premiums "on any
policy written by" them "on the life of" one "who has terminated
a policy of any . . . description . . . not more than three months
before or within three months after such policy is written," was a
violation of § 164A, inserted in G. L. (Ter. Ed.) c. 175 by St. 1938,
c. 225, so far as the provision deprived the agents of credit in com-
puting their commissions or salaries because of the surrender or
lapse, after the effective date of the statute, of "industrial" life insur-
ance policies upon which premiums had been paid for three years or
more, and the company was enjoined from enforcing the provision
to that extent.

Section 164A, inserted in G. L. (Ter. Ed.) c. 175 by St. 1938, c. 225, is
not unconstitutional as interfering with the insurer's freedom of con-
tract, or as depriving him of property without due process of law
or of equal protection of the laws; and is a proper exercise of the
police power.

INFORMATION, filed in the Superior Court on June 13,
1940, by the Attorney General at the relation of the com-
missioner of insurance.

The case was reserved by *Greenhalge*, J., upon the plead-
ings and an agreement as to material facts.

*R. Clapp*, Assistant Attorney General, for the Attorney
General.

*T. Allen*, for the respondent.

*S. E. Angoff, S. S. Grant, & F. F. Cohen*, by leave of
court, submitted a brief as amici curiae.

QUA, J.    The Attorney General, through this information
filed at the relation of the commissioner of insurance under

G. L. (Ter. Ed.) c. 175, § 193A, seeks to restrain the alleged violation by the respondent of the provisions of G. L. (Ter. Ed.) c. 175, § 164A, inserted by St. 1938, c. 225.

Section 164A reads as follows: "If a policy of industrial life insurance upon which premiums have been paid for three years or more is surrendered to the company for a cash surrender value or paid up insurance or extended term insurance or lapses for non-payment of premiums, the agent shall not be charged with a decrease for said premium and no deduction shall be made from his commission or salary."

This section was approved April 21, 1938, and went into effect July 21, 1938. The alleged violation is found in the terms of a new form of agreement between the company and its "industrial" agents which was put into operation on July 4, 1938, after the enactment of § 164A, but before that section took effect. The portion of the new form of agreement which it is contended violates the statute is in these words, "Sec. 9. (c). That, in the calculation of my 'Net First-Year Premiums', I [the agent] shall not receive credit for any 'first-year premiums' on any policy written by me on the life of any person, or any relative sharing the home with the person, who has terminated a policy of any kind or description, either by non-payment of premiums payable under the terms thereof or by surrender, not more than three months before or within three months after such policy is written. A policy lapsed for non-payment of premiums, and having continuing benefits under paid-up or extended insurance, shall be deemed to have terminated for the purposes of this Section."

In *Cronin* v. *Metropolitan Life Ins. Co.* 304 Mass. 53, we were called upon to construe § 164A. We there held this section to mean "that in computing the agent's commission or salary no deduction shall be made on account of the surrenders or lapses to which the statute refers from the commission or salary which under his contract the agent would receive if there had been no such surrenders or lapses" (page 54), and that "The purpose was to exclude these surrenders and lapses as elements operating adversely to the agent in computing his commission or salary" (pages

54, 55). In the case now before us the respondent argues, in substance, that it makes no "deduction" from the agent's commission or salary, but that the substitution of a new policy for an old one involves loss to the insured, and that therefore the company, desiring to make it an object to its agents to discourage such substitution rather than to encourage it for their own personal · advantage, merely provides that it will not obligate itself to pay any commissions on "first-year premiums" on policies taken out on the life of any person "or any relative sharing the home with the person" who terminates a policy by surrender or lapse in the manner described within three months before or after the new policy is written.

We cannot agree with this argument. In general, the company pays first year commissions on policies written by its agents. It does not refuse to accept the "re-written" or "replacement" policies, as they are called. It permits its agents to write such policies. In general, it does not even deny to its agents first year premium commissions on policies which replace former surrendered or lapsed policies. It simply reduces the amount which it would otherwise pay its agents for first year premiums upon new policies written by them by a sum which is dependent upon surrenders and lapses of "industrial" policies within three months. And in instances where the former policy is not surrendered or lapsed until after the new policy is written it cannot even be determined that any reduction will be made in the agent's compensation until some time after the event (writing of the new policy) out of which the right to a commission commonly arises. Whether the statute has been violated is to be determined with reference to the substance of the relation between the company and its agents and not with reference to the form of bookkeeping entries adopted. In view of the object to attain which the statute must have been enacted we cannot avoid the conclusion that the respondent's form of contract does make a "deduction" within the meaning of that word in the statute "on account of the surrenders or lapses to which the statute refers from the commission or salary which under his con-

tract the agent would receive if there had been no such surrenders or lapses." *Cronin* v. *Metropolitan Life Ins. Co.* 304 Mass. 53, 54.   In so far as the respondent's form of contract deprives its agents of first year premium commissions because of the surrender or lapse in the manner described in the statute of "industrial" policies upon which premiums have been paid for three years or more, it is in conflict with the statute.

But the respondent further contends that the statute is unconstitutional in that it unwarrantably interferes with the respondent's freedom to contract, deprives the respondent of property without due process of law and of equal protection of the laws, and is not a valid exercise of the police power of the Commonwealth.   The question of constitutionality was not argued and was not decided in *Cronin* v. *Metropolitan Life Ins. Co.* 304 Mass. 53.   We are of the opinion, however, that the statute is not unconstitutional upon any of the grounds urged.   All of the contracts here involved between the respondent and its agents were entered into after the statute was enacted, although many of them must have been entered into before it took effect.   We are therefore not here concerned with the impact of a statute upon a contract made before the statute was enacted.

It is well settled that the business of insurance is subject to a large degree of legislative regulation.   *New York Life Ins. Co.* v. *Hardison,* 199 Mass. 190, 198.   *Delaney* v. *Ancient Order of United Workmen of Massachusetts,* 244 Mass. 556, 567.   *Opinion of the Justices,* 251 Mass. 569, 607.   *Goldman* v. *Commercial Travellers Eastern Accident Association,* 302 Mass. 74, 77.   *German Alliance Ins. Co.* v. *Superintendent of Insurance of Kansas,* 233 U. S. 389.   *National Union Fire Ins. Co.* v. *Wanberg,* 260 U. S. 71.   This power extends to the reasonable regulation in the public interest of insurance brokers, *La Tourette* v. *McMaster,* 248 U. S. 465, and agents, *Stipcich* v. *Metropolitan Life Ins. Co.* 277 U. S. 311, 320, and of the compensation paid to agents. *O'Gorman & Young, Inc.* v. *Hartford Fire Ins. Co.* 282 U. S. 251.   *Osborn* v. *Ozlin,* 310 U. S. 53, 65, 66.   See *Wilson* v.

*New,* 243 U. S. 332, 352, 353, 354. But quite apart from the peculiar position of the insurance business the right of freedom to contract in general is subject to reasonable legislative control under the police power. The subject is fully discussed in *Opinion of the Justices,* 163 Mass. 589, in *Holcombe* v. *Creamer,* 231 Mass. 99, and in numerous other cases among which may be mentioned *Commonwealth* v. *Boston Transcript Co.* 249 Mass. 477, 483; *Chicago, Burlington & Quincy Railroad* v. *McGuire,* 219 U. S. 549, and *West Coast Hotel Co.* v. *Parrish,* 300 U. S. 379. Compare *Opinion of the Justices,* 271 Mass. 598. Legislative power of control in the interest of the public welfare exists, within reasonable limits, even though its exercise may affect the subsequent carrying out of executory contracts entered into before the legislation takes effect. *Opinion of the Justices,* 261 Mass. 523, 553. *Loring* v. *Commissioner of Public Works,* 264 Mass. 460, 466. *Home Building & Loan Association* v. *Blaisdell,* 290 U. S. 398. *Veix* v. *Sixth Ward Building & Loan Association of Newark,* 310 U. S. 32, and cases cited.

The statute here assailed does not appear to be capricious, arbitrary, or unreasonably discriminatory. The Legislature may have believed that insurance agents dealing with "industrial" insurance policies were commonly persons of comparatively small income; and that it was an unfair practice for the companies to insist upon methods of calculating the agents' compensation which might result in an agent finding at the end of a period of work that the earnings upon which he depended for a livelihood were in considerable part swept away by reason of surrenders and lapses which he could not control and for which he was in no wise to blame. Whether, as contended by the respondent, the public welfare would be better served by a contract which would encourage the agents to exert themselves to the utmost to prevent surrenders and lapses was a matter for the Legislature to decide.

Classification as a group of insurance agents dealing with "industrial" policies for the purpose of alleviating the conditions of their employment in the particular to which the statute is directed cannot be pronounced palpably unreason-

able. In *Opinion of the Justices*, 163 Mass. 589, at page 595, the then justices of this court said that the regulation of contracts by statute not amounting to a determination of rates or prices "has not been confined to public employments or to business which may be said to be affected with a distinct public interest," but that it "relates to a great variety of contracts, and has been passed, some of it to promote the public health or the public morals or the public convenience, some of it for the protection of individuals against fraud, and some of it for the protection of classes of individuals against unfair or unconscionable dealing." In *Frisbie* v. *United States*, 157 U. S. 160, at 165, 166, it is said that government "may restrain all engaged in any employment from any contract in the course of that employment which is against public policy." See the discussion of classification in *Radice* v. *New York*, 264 U. S. 292, 296–298. There are instances where interference with freedom of contract brought about by legislative classification comparable to that made by the statute here in question has been upheld. Thus a statute requiring employers to redeem in cash "store orders" issued in payment of wages due their employees (*Knoxville Iron Co.* v. *Harbison*, 183 U. S. 13), a statute prohibiting the payment of seamen's wages in advance (*Patterson* v. *Bark Eudora*, 190 U. S. 169), and a statute requiring coal to be measured for the purpose of fixing the miners' compensation before being screened (*McLean* v. *Arkansas*, 211 U. S. 539; *Rail & River Coal Co.* v. *Industrial Commission of Ohio*, 236 U. S. 338) have been held valid. Examples of statutes in this Commonwealth restricting an employer's freedom to contract with specified classes of employees may be found in G. L. (Ter. Ed.) c. 149, §§ 153, 154, regulating so called "fines" imposed upon weavers (see *Commonwealth* v. *Perry*, 155 Mass. 117; *Commonwealth* v. *Lancaster Mills*, 212 Mass. 315), and in G. L. (Ter. Ed.) c. 149, § 158, prohibiting deductions from wages of women and children in manufacturing or mechanical establishments while the machinery is stopped. See also G. L. (Ter. Ed.) c. 149, § 148, as amended, relating to the weekly payment of wages (*Erie Railroad* v.

*Williams,* 233 U. S. 685); G. L. (Ter. Ed.) c. 151, as appearing in St. 1937, c. 401, § 1, the "minimum fair wage for women and minors" law (*West Coast Hotel Co.* v. *Parrish,* 300 U. S. 379), and G. L. (Ter. Ed.) c. 152, § 13, as amended by St. 1933, c. 68, regulating the charges of attorneys, physicians and hospitals in workmen's compensation cases (*Gritta's Case,* 241 Mass. 525, 528). And we have already referred to a case upholding a statute that included a prohibition to an insurer against allowing a commission to any person for acting as its local agent in excess of that allowed to any of its local agents on similar risks. *O'Gorman & Young, Inc.* v. *Hartford Fire Ins. Co.* 282 U. S. 251.

After the effective date of the statute the respondent could not lawfully employ agents to procure "industrial" policies without obligating itself to pay them in accordance with the terms of the statute. See *Patterson* v. *Bark Eudora,* 190 U. S. 169; *Midland Realty Co.* v. *Kansas City Power & Light Co.* 300 U. S. 109, 114.

A final decree is to be entered in the Superior Court permanently enjoining the respondent from enforcing section 9 (c) of its "Agent's Agreement," attached to its answer and marked "B," by denying credit to its agents in computing their commissions or salaries by reason of the surrender to the company for cash surrender value or paid up insurance or extended term insurance or by reason of the lapse for nonpayment of premiums of any policy of "industrial" life insurance upon which premiums have been paid for three years or more, and from making deductions from its agents' commissions or salaries because of such surrenders or lapses, and ordering the respondent to pay to its agents such sums as it has failed to credit to them or has deducted from their commissions or salaries because of such surrenders or lapses occurring on or after July 21, 1938.

*Ordered accordingly.*