## OPINION OF THE JUSTICES TO THE SENATE.

A statute, which should prohibit under a heavy penalty a railroad corporation from discharging or disciplining an employee in consequence of information relating to the employee's conduct until such employee shall have been given an opportunity to make a statement in the presence of the person or persons furnishing the information, would be in violation of the Fourteenth Amendment to the Constitution of the United States and of the clauses of the Constitution of this Commonwealth containing similar guaranties of property rights; and such a statute also would be unconstitutional as class legislation creating a special privilege for railroad employees and subjecting railroad corporations to a burden from which other employers would be free. LORING & CROSBY, JJ., stating that, inasmuch as the last mentioned ground of unconstitutionality dis-

posed of all the questions addressed to the justices, they preferred to express no opinion upon the first mentioned ground of unconstitutionality, although not intending to throw any doubt on the opinion of the other justices as to that ground.

THE following order was passed by the Senate on April 23, 1915, and on April 26, 1915, was transmitted to the Justices of the Supreme Judicial Court. On May 3, 1915, the Justices returned the answer which is subjoined.

WHEREAS, There is pending in the Senate a bill printed as Senate Document No. 537, a copy of which is hereto annexed, wherein it is provided that no employee of a railroad corporation shall be disciplined or discharged in consequence of information affecting the employee's conduct until such employee shall have been given an opportunity to make a statement in the presence of the person or persons furnishing the information; now, therefore, be it

ORDERED, That the opinion of the Justices of the Supreme Judicial Court be required by the Senate upon the following important questions of law:

First. Is it within the constitutional power of the General Court to enact legislation limiting the right of railroad corporations to discharge their employees for cause by annexing conditions thereto of the nature above set forth?

Second. Is it within the constitutional power of the General Court to enact legislation of the nature above set forth relative to the employees of railroad corporations giving them as a class privileges not enjoyed by the rest of the community?

Third. Are the provisions of Senate Bill No. 537 constitutional?

To the Honorable Senate of the Commonwealth of Massachusetts:

We, the Justices of the Supreme Judicial Court, having considered the questions propounded by the order of April 23, 1915, a copy of which is hereto annexed, respectfully answer them as follows:

The substance of the proposed statute to which the questions relate is to prohibit, under a heavy penalty, a railroad corporation from discharging an employee by reason of information touching his conduct, until after he has been given an opportunity to make a statement in the presence of the person or persons furnishing the

information. As a corporation can have no first hand observation and can acquire information as to incompetency, inefficiency or wrongful conduct of its employees only through some person, the proposed statute means that such a corporation never can discipline or discharge any of its employees for misconduct, no matter how flagrant, except on his own confession, without giving him a hearing in the presence of the person affording the information, regardless of the fact whether that person is an employee or an entire stranger. Although the title of the bill refers to the "use of detectives," there is no such limitation in the body of the bill. It applies broadly to all persons who may furnish information, whether pure volunteers or others, even though it be wholly beyond the power of the railroad to produce the person furnishing the information and even though that person may be a stranger to the railroad and decline for any reason, or be unable, to confront the employee. The questions have been considered, however, upon the broad principles involved in the proposed bill, and not upon its details.

The Fourteenth Amendment to the Federal Constitution prohibits the several States from depriving "any person of life, liberty, or property, without due process of law." The Supreme Court of the United States is the final authority upon the scope and meaning of these words. That court has said that "The general right to make a contract in relation to his business is part of the liberty of the individual protected by the Fourteenth Amendment of the Federal Constitution. *Allgeyer* v. *Louisiana*, 165 U. S. 578. . . . The right to purchase or to sell labor is part of the liberty protected by this amendment, unless there are circumstances which exclude the right." *Lochner* v. *New York*, 198 U. S. 45, 53. In the opinion in *Adair* v. *United States*, 208 U. S. 161, at pages 174, 175, is found this interpretation: "While . . . the rights of liberty and property guaranteed by the Constitution against deprivation without due process of law, is subject to such reasonable restraints as the common good or the general welfare may require, it is not within the function of government — at least in the absence of contract between the parties — to compel any person in the course of his business and against his will to accept or retain the personal services of another, or to compel any person, against his will, to perform personal services for

another.   The right of a person to sell his labor upon such terms as he deems proper is, in its essence, the same as the right of the purchaser of labor to prescribe the conditions upon which he will accept such labor from the person offering to sell it.   So the right of the employé to quit the service of the employer, for whatever reason, is the same as the right of the employer, for whatever reason, to dispense with the services of such employé."   It was said in *Coppage* v. *Kansas*, 236 U. S. 1, at page 14: "Included in the right of personal liberty and the right of private property — partaking of the nature of each — is the right to make contracts for the acquisition of property.   Chief among such contracts is that of personal employment, by which labor and other services are exchanged for money or other forms of property.   If this right be struck down or arbitrarily interfered with, there is a substantial impairment of liberty in the long-established constitutional sense."

In the application of these principles it has been held that the right to liberty and property secured by the Fourteenth Amendment was impaired by a statute which prohibited the discharge of any employee because he was a member of a labor union. *Adair* v. *United States*, 208 U. S. 161.   That decision recently has been reaffirmed in its application to a statute which made unlawful any requirement not to join or remain a member of a labor union as a condition of securing or continuing in employment.   *Coppage* v. *Kansas*, 236 U. S. 1.   The ground upon which these decisions rest is that the freedom of contract guaranteed by the Fourteenth Amendment prohibits the imposition of such restraints upon the right of the employer to decline to employ at all, or continue to employ, a person whom he does not desire. It there was said that "the employer must be left at liberty to decide for himself whether such membership by his employé is consistent with the satisfactory performance of the duties of the employment."   It seems to us impossible to say that the right of an employer to discharge an employee because of information affecting his conduct in respect of efficiency, honesty, capacity, or in any other particular touching his general usefulness, without first providing a hearing, stands on a different footing or is less under the shield of the Constitution than the right held to be secured in the Adair and Coppage cases.   Our own Constitu-

tion contains in several clauses similar guarantees of the right to acquire, possess and protect property, which doubtless have substantially the same meaning in this respect as has the Fourteenth Amendment to the Federal Constitution. *Opinion of the Justices,* 209 Mass. 607, 612. *Opinion of the Justices,* 211 Mass. 618. It has been held that the right to acquire, possess and protect property secured by our Constitution "includes the right to make reasonable contracts, which shall be under the protection of the law." *Commonwealth* v. *Perry,* 155 Mass. 117, 121. In the absence of a contract, conspiracy or other unlawful act, the right of the individual employee to leave the service of a railroad without cause, or for any cause, is absolute. The railroad has the correlative right under like circumstances to discharge an employee for any cause or without cause. It is an unreasonable interference with this liberty of contract to require a statement by the employer of the motive for his action in desiring to discharge an employee, as this statute in substance does, and to require him also as a prerequisite to the exercise of his right, to enable the employee to make a statement in the presence of some one else, — a thing which may be beyond the power of the employer. His freedom of contract would be impaired to an unwarrantable degree by the enactment of the proposed statute. The power of the Legislature to require a hearing in connection with the discharge of one employed under the civil service law rests on the authority of the Commonwealth to direct the conduct of its government and that of its political subdivisions. *Opinion of the Justices,* 208 Mass. 619.

Legislation similar to that of the proposed bill has been held unconstitutional in other jurisdictions. *Atchison, Topeka & Santa Fe Railway* v. *Brown,* 57 Kans. 312. *Wallace* v. *Georgia, Carolina & Northern Railway,* 94 Ga. 732.

These reasons make it imperative to answer the first question in the negative.

Absolute equality before the law and the equal protection of the laws are principles established by the Constitutions of the United States and of this Commonwealth. *Opinion of the Justices,* 211 Mass. 618. While reasonable classifications may be made by the Legislature in the interests of the public health, public safety and public morals, yet there must be some rational relation be-

tween the object to be attained and the classification, in order that it may not violate the constitutional guaranty that all persons, including corporations, shall be equal in the protection afforded by the laws. Many such classifications have been upheld as not contrary to the principle. See, for example, *Louisville & Nashville Railroad* v. *Melton*, 218 U. S. 36; *Keokee Consolidated Coke Co.* v. *Taylor*, 234 U. S. 224. But the proposed bill has no reference to the safety of the travelling public. It applies only to one kind of common carrier and not to others. It imposes a burden upon railroads from which all other common carriers and employers of labor are free. It singles out employees of railroads and confers upon them immunities and advantages enjoyed by no others who work for individuals and corporations, in a particular which has no relation to the kind of employment engaged in by them. In both respects it tends to destroy equality. It creates of railroad employees a specially privileged class, and subjects railroads, as to a matter having no special relation to their business as distinguished from other kinds of business, to obstacles and burdens from which other employers are free. There is strong ground for the conclusion that the selection of railroads as the sole object of severely criminal legislation as to a matter having no particular relation to the management of railroads, would be arbitrary and hence unwarrantable under the Constitution. *Connolly* v. *Union Sewer Pipe Co.* 184 U. S. 540, 560. *Gulf, Colorado & Santa Fe Railway* v. *Ellis*, 165 U. S. 150. *Opinion of the Justices*, 163 Mass. 589. We are of opinion that the second question must be answered in the negative.

It is not necessary to consider whether the proposed bill offends against other provisions of the Constitution. For the reasons already stated, the third question must be answered, "No."

ARTHUR P. RUGG.
HENRY K. BRALEY.
CHARLES A. DE COURCY.
EDWARD P. PIERCE.
JAMES B. CARROLL.

We subscribe to the answer given above to the second question. The legislation which is the subject of the first question is confined to the employees of railroad corporations, is open to

the objections set forth in the answer to the second question and is disposed of by them. We do not intend to throw doubt upon the answer to the first question. Upon that matter we express no opinion. But we prefer not to express an opinion on a matter which it is not necessary to consider in answering fully the questions asked.

We subscribe to the answer to the third question.

WILLIAM CALEB LORING.
JOHN C. CROSBY.