YORK HARBOR VILLAGE CORPORATION

*vs.*

FRED H. LIBBY, ET AL.

York.    Opinion January 31, 1928.

*Due process of law, guaranteed by the Federal Constitution, requires notice, opportunity for hearing and a judgment of some judicial or other authorized tribunal.    The mere ipse dixit of a legislature or a municipality exercising delegated authority is not due process.*

*No person can be constitutionally deprived of property without due process of law. But land, as well as other property, is held subject to the implied condition that it shall not be used for any purpose that injures or impairs the public health, morals, safety, order or welfare.*

*With the expediency, justice, wisdom or policy of a statute the Court is not concerned.    The judgment of the legislative department of the government is as to those matters conclusive and final.*

*A legislative act is presumptively constitutional.    It cannot be declared invalid by the Court unless beyond a reasonable doubt it violates some constitutional limitation.*

*If a given act or condition is substantially injurious to the public, there is no constitutional and can be no other limitation of a state's legislative power to characterize it as a nuisance and provide for its restraint by judicial process.*

*The Court takes judicial notice of public statutes. It presumes that a municipal ordinance duly pleaded and proved is based upon such public statute as justifies its enactment.*

A village corporation ordinance establishing zones and forbidding in one zone "camping grounds conducted for private gain," such ordinance being authorized by statute, is not a deprivation of property. It is an enforcement of a condition. The implied legislative determination that such camping grounds are injurious to the public interest is not manifestly erroneous.

A zoning ordinance, otherwise valid, is not rendered void by reason of causing financial loss nor because some land in the unrestricted is conditioned like that in the restricted zone.

When the legislative department has constitutionally declared that a certain act or thing is a nuisance, a complaint sufficient in other respects is not demurrable because of its omission to allege the reasons why it is a nuisance.

On report. A bill in equity by which the York Harbor Village Corporation seeks to enjoin the defendants from maintaining a camping ground for private gain within the limits of a certain portion of the town of York which has been laid out as a district or zone and designated zone B. A hearing was had upon bill, answer with demurrer inserted, replication and proof, and at the conclusion of the evidence, by agreement, the cause was reported to the Law Court.

Bill sustained. Permanent injunction to issue.

The case appears in, the opinion.

*Willard & Ford,* for plaintiff.

*Stewart & Hawkes,* for defendants.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, STURGIS, PATTANGALL, JJ.

DEASY, J. *The Case Stated.* The Complainant is a village corporation chartered by Special Act of 1901, Chap. 481.

By Public Law of 1925, Chap. 209, Sec. 1, village corporations are authorized to enact ordinances dividing their territory into zones and providing that "Camping grounds conducted for private gain" shall be restricted to certain zones and excluded from others.

In 1926 the complainant adopted an ordinance dividing the corporation territory into Zones "A" and "B" and providing that "no

person shall within the limits of Zone B conduct for private gain a camping ground or grounds."

The bill alleges that the defendants "threaten, propose and intend and are now proceeding to make arrangements for the purpose of using (certain land) within Zone B for conducting a camping ground or grounds for private gain within Zone B."

The answer admits the truth of these allegations.   The complainant prays for a permanent injunction.

It is strenuously argued that the Legislative Act of 1925 and the ordinance enacted under it are unconstitutional and void.

DUE PROCESS.   DEPRIVATION OF PROPERTY.

The constitutional limitation relied upon by the defendants and most frequently invoked by litigants, who challenge the validity of state statutes, is the fourteenth amendment to the Federal Constitution.

This amendment provides that no state shall "deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

Article 1 of the State Constitution contains analogous provisions.

If, by the ordinance complained of, the defendants have been *deprived* of property, it has been done without the due process of law guaranteed by the constitution. ·

Due process requires notice and opportunity for hearing.   "Due process" said Webster "hears before it condemns."

It also requires a judgment of some judicial or other authorized tribunal.   *Bennett* vs. *Davis*, 90 Me. 105;   *Randall* vs. *Patch*, 118 Me. 303; 6 R. C. L. 457.

The mere ipse dixit of a legislature or of a municipality exercising delegated legislative authority is not due process.

Have the defendants been deprived of property?   The land which, under a deed of conveyance, they have been occupying and using has not been taken from them.   But this consideration is not decisive.

The legal right to use and derive a profit from land or other thing is property.   *Buchanan* vs. *Warley*, 245 U. S. 74, 62 L. Ed. 161.

Before the passage of the ordinance the defendants enjoyed the right of using their land to conduct thereon a "camping ground for

private gain." This privilege is now denied them. Thus, it is argued, they have been deprived of property.

This reasoning proceeds upon the erroneous theory that property rights are wholly absolute.

But so called private property is held subject to the public rights of taxation and eminent domain.

It is also held subject to the implied condition that it shall not be used for any purpose that injures or impairs the public health, morals, safety, order or welfare. *Mugler* vs. *Kansas*, 123 U. S. 623; 31 L. Ed. 211; *Commonwealth* vs. *Alger*, 7 Cush. 85; *State* vs. *Robb*, 100 Me. 185, 6 R. C. L. 193.

The enforcement of a condition in subordination to which land or other thing is held is not a deprivation of property.

## Due Process. Police Power.

It is one of the manifestations of the far reaching police power of the states to enforce and give practical effect to these conditions which the law reads into every title deed. 6 R. C. L. 187.

It is said that police power has not been and perhaps cannot be defined with precision. 6 R. C. L. 184.

It is not the offspring of constitutions. It is older than any written constitution. It is the power which the states have not surrendered to the nation, and which by the Tenth Amendment were expressly reserved "to the states respectively or to the people."

Limitations expressed or necessarily implied in the Federal Constitution are the frontiers which the Police Power cannot pass. Within those frontiers its authority is recognized and respected by the constitution and given effect by all courts.

We have seen that private property is held subject to the implied condition that it shall not be used for any purpose that injures or impairs the public health, morals, safety, order or welfare. Under the police power statutes and authorized ordinances give this condition practical effect by restrictions which regulate or prohibit such uses.

If the use is actually and substantially an injury or impairment of the public interest in any of its aspects above enumerated a regulating or restraining statute or ordinance conforming thereto, if itself reasonable and not merely arbitrary, and not violative of any con-

stitutional limitation, is valid. It is not a deprivation of property which the constitution forbids, but an enforcement of a condition subject to which property is held.

Many and divers uses of property have been held to be so detrimental to the public interest as to be subject to restriction. *State* vs. *Robb*, 100 Me., 185, and cases cited. *Opinion of Justices*, 103 Me., 512 and cases cited.

Zoning laws are the same in principle as those involved in the above cases. It is stated in 150 N. E. 123 that prior to 1926, 40 state legislatures had authorized Zoning ordinances and 320 municipalities adopted them. Most of these prohibit the carrying on of business in zones set apart for residential purposes. While there are a few authorities contra, most of them sustain Zoning laws and ordinances as constitutional and valid.

The Federal Supreme Court in 1926 held valid a Zoning ordinance adopted by the Village of Euclid, Ohio. In the opinion by Mr. Justice Sutherland it is said that "This question involves the validity of what is really the crux of the more recent zoning legislation, namely, the creation and maintenance of residential districts, from which business and trade of every sort, including hotels and apartment houses, are excluded. The decisions of the state courts are numerous and conflicting; but those which broadly sustain the power greatly outnumber those which deny it altogether or narrowly limit it * * " "There is a constantly increasing tendency in the direction of the broader view." *Euclid* vs. *Ambler Realty Co.* U. S. S. C. 71, L. Ed. 176.

Three justices dissented, but the majority opinion is supported by cases therein cited from Massachusetts, Louisiana, Illinois, Minnesota, Wisconsin, Kansas, California and Rhode Island. See also the following sustaining authorities: Appeal of Ward 289 Penn. 458, 137 At. 630. *Wulfsohn* vs. *Burden* 241 N. Y. 288, 150 N. E. 120. *Des Moines* vs. *Oil Co.* 193 Iowa 1096, 184 N. W. 823. *Max* vs. *Saul* (N. J.) 127, At. 785. *Colby* vs. *Board* (Colo.) 255 Pac. 445. *Larrabee* vs. *Bell* (D. C.) 10 Fed. (2nd) 986. *Harris* vs. *State* (Ohio) 155 N. E. 166. *Wadleigh* vs. *Gilman*, 12 Me. 403.

The United States Supreme Court has recently affirmed the reasoning and conclusions of the Euclid case. *Goreib* vs. *Fox*, 71 L. Ed. 1231.

Our attention has been called to no zoning statute like that under consideration. As above appears courts of many states and the Federal Supreme Court have held that defined areas or zones may be constitutionally restricted against *all* business uses. The Maine statute authorizes the restriction of a zone or zones against *one* business use to wit, conducting camping grounds for private gain.

The reasons for holding that business in certain areas may be constitutionally treated as so detrimental to the public welfare as to justify legislative restraint are summarized in *Euclid* vs. *Ambler Realty, Co.* supra. Some, at least, of these reasons, apply to the business of conducting camping grounds. More especially is this true as respects order and sanitation. There is no evidence it is true that camping grounds conducted by the defendants or others have caused any impairment of the public health or order. But the legislature may properly have considered tendencies. It was not obliged to wait until the horse was stolen before putting a button on the stable door.

It is suggested, but we think not proved, that offensiveness to some supersensitive eyes is the only respect in which camping grounds affect the public welfare.

If this were true and proved, we are not prepared to say that we should hold the restrictions to be reasonable and valid,— even if one of the reactions were a depreciation in value of surrounding property.

But the fact "that considerations, of an aesthetic nature also entered into their passage would not invalidate them." *Welch* vs. *Swazey*, 214 U. S. 91, 53 L. Ed. 930.

The legislature has determined that the use of land as camping grounds conducted for business is so injurious or menacing to the public as to justify ordinances confining it to certain zones.

Every presumption being in favor of the constitutionality of legislative acts, this court would not be justified in holding that the legislative restraint shown in this case is so arbitrary and unreasonable as to be an unconstitutional deprivation of property.

DENIAL OF EQUAL PROTECTION.

The defendants also contend that they have been denied the "equal protection of the laws" guaranteed by the Fourteenth Amendment. The statute is, they urge, discriminatory. But discriminatory statutes are not, for that reason, invalid.

In the enactment of many statutes, classification of persons is proper, legal and indeed necessary.    Classifications based on age, sex, occupation, degree of relationship and density of population are familiar.

A classification must not be arbitrary.    It must be natural and reasonable.    *Dirken* vs. *Paper Co.* 110 Me. 386.    *Rast* vs. *Van Deman* 240 U. S. 357, 60 L. Ed. 687.    *Royster* vs. *Virginia* 253 U. S. 415, 64 L.Ed. 990.    *Railway Co.* vs. *Vosburg*, 238 U. S. 59, 59 L.Ed. 1200. *Insurance Co.* vs. *Lewis*, 233 U. S. 418, 58 L.Ed. 1024.

It must be based upon an actual difference in the classes bearing some substantial relation to the public purpose sought to be accomplished by the discrimination in rights and burdens.    *State* vs. *Latham*, 115 Me. 178.    *Opinion of Justices* 220 Mass. 631.    *Welch* vs. *Swazey*, 193 Mass. 364.    *Insurance Co.* v. *McMaster*, 237 U. S. 73, 59 L.Ed. 843.    *Railway Co.* vs. *Vosburg*, supra.

If a classification, though necessarily discriminatory, stands these tests, it is not a denial of equal protection of the laws.

The statute in question classifies cities and hence property owners therein.    It gives the power of enacting zoning ordinances to cities, and to those only having a population exceeding 35,000.    It puts towns and village corporations in separate classes.    The defendants do not complain of these discriminations.

They point out however that the statute does not apply to all village corporations, but to those only "whose electors and voters resident therein are also qualified voters in the town wherein said corporation is located."    Act of 1925, Chap. 209, Sec. 8..    It is argued that this is an unnatural, arbitrary and unreasonable classification; that there is no substantial relation between limitations of the right of suffrage and restrictions upon the use of land.    The statute however is an enabling act.    Under the charters of some village corporations, non-resident property owners are authorized to vote in village affairs.    The legislature did not deem it proper or wise to delegate any of its police power to such non-resident voters.

All legislative acts are presumptively legal and valid.    This classification is not so clearly unreasonable as to render the statute unconstitutional.

It cannot be said that the ordinance, "passes the bounds of reason and assumes the character of a merely arbitrary fiat." *Extract Co.* vs. *Lynch* 226 U. S. 204, 57 L. Ed. 188.

The defendants complain that the classification is unreasonable in another respect. The statute applies, it is said, only to such camping grounds as are conducted for private gain. This is true. In other words it prohibits, in certain zones the *business* of conducting camping grounds. Subject to regulations it permits the maintenance of camps. which are not maintained for profit. Such a classification is not merely arbitrary.

Again it is said that by the statute one kind of business is arbitrarily and unreasonably singled out for restraint. But this discrimination is based upon distinctions that may well be deemed substantial.

The legislature may have determined that the tendency of camping grounds maintained as a business is to attract a temporary, promiscuous, nomadic, congested population living in tents or under conditions making difficult the enforcement of police and sanitary regulations. This classification is not wholly unreasonable.

"If an evil is specially experienced in a particular branch of business it is not necessary that the prohibition should be couched in all-embracing terms." *Radice* vs. *New York,* 264 U. S. 298, 68 L.Ed. 695.

STATUTORY NUISANCE.

The defendants attack Sec. 2 of the statute which declares that "camping grounds maintained contrary to the provisions of an ordinance, or by-law, passed hereunder is a nuisance" (are nuisances). They argue that "the legislature has no authority to make any given state of facts constitute a nuisance by virtue of its mere declaration."

Except as it confers jurisdiction under R. S. Chap. 82, Sec. 6 it may be doubted that this proposition, even if well founded is of any importance. An act injurious to the public welfare may be restrained without calling it a nuisance. We are concerned, not with words, but with rights.

Moreover if a given act or condition is substantially injurious to the public, there is no constitutional, and can be no other limitation of a state's legislative power to characterize it as a nuisance and pro-

vide for its restraint by judicial process.    Among many authorities. so holding are the following:    *Houlton* vs. *Titcomb,* 102 Me. 285; *Mugler* vs. *Kansas* 123 U. S. 623, 31 L. Ed. 214; *Carlton* vs. *Rugg* 149 Mass. 554; *People* vs. *Edison Co.* 144 N. Y. S. 707, 20 R. C. L. 387.

REASONABLENESS OF ORDINANCE.

The York Harbor Village Corporation had authority to enact *a* zoning ordinance.    But the defendants challenge the validity of *the* ordinance which is adopted.    The lines dividing the zones are claimed to be so drawn as to be unreasonable and oppressive.

It is urged that the ordinance causes financial loss to persons owning land in the restricted zone.    This is probably true of all zoning ordinances.    In theory, at least, this loss is in part offset by participation in improved public welfare.

"Every exercise of the police power in respect to the use of land is likely to affect adversely the property interests of somebody."    *Spector* vs. *Building Inspector.*    (Mass.) 145 N. E. 267.

It is said that certain other land outside of Zone B is conditioned precisely like the defendants' property.    This is probably true wherever zones have been established.    It is true wherever lines are drawn by man and not by nature in space, time or circumstance. "In some field the bad fades into the good by such insensible degrees that the two are not capable of being readily distinguished in terms of legislation."    *Euclid* vs. *Ambler Realty Co., Supra.*

In considering the reasonableness of the particular ordinance the general situation, the setting, so to speak is material.    We quote and adopt the language of Mr. Justice Sturgis in his decree granting a temporary injunction.

"The town of York is essentially a summer resort.    It has no important industries or commercial enterprises.    Its chief and only substantial business is such as arises in the course of supplying the needs of summer visitors and residents.    The native population is limited.    The summer residents are numerous and their property holdings are extensive.    The residences are of an expensive type, with spacious grounds.    It is a town distinctly of summer homes. The camping ground heretofore maintained by the defendants is immediately adjacent to one of the residential areas of the character

described, and in the last season at times held approximately one hundred and fifty tents. Its sanitary conveniences are limited, and its maintenance in the future will undoubtedly involve the usual incidents of the gathering together of such a number of persons under camping ground circumstances."

The voters of the York Harbor Village Corporation presumably having in view not individual instances, but all the village territory, its business, needs and welfare, have determined that the lines established are reasonable.

The court cannot say that this determination is clearly erroneous.

DEMURRER.

A general demurrer is inserted in the answer. The defendants argue that this demurrer should be sustained and the bill dismissed notwithstanding the validity of the statute and ordinance.

(1)   As one ground of demurrer the defendants urge that the bill contains no allegation that an action complaint or indictment is pending as required by R. S. Chap. 23, Sec. 20.

This suit however is brought, not under Chap. 23, but under Chap. 82, Sec. 6 R. S. which gives to the court equitable jurisdiction in case of nuisances. When a nuisance is not existent but threatened and imminent, Chap. 82 affords the only remedy. When, however, as in the instant case the nuisance is alleged to be existent and its continuance threatened, the complainant has a choice of remedies. If he elects Chap. 82, he must allege and prove that his right has been previously established by a legal proceeding, so courts have frequently said. But to this there are several well settled exceptions, to wit: cases of, (a) long uninterrrupted enjoyment of right invaded, or (b) imperious necessity as where great and irreparable damage is threatened and imminent, or (c) menace of a multiplicity of suits which equitable procedure will avoid, or (d) absence of plain adequate and complete remedy at law. *Tracy* vs. *LeBlanc*, 89 Me., 309. Exception (d) is sufficiently set forth in the bill.

For a further reason we think that the bill should not be dismissed on this ground. The disinclination of the chancery court to exercise original jurisdiction to restrain nuisances notwithstanding that in this state such jurisdiction was vested in it ninety years ago (Act of 1837, Chap. 302), is no doubt due in some part to its reluctance to

use the process of injunction. But it is in large part due, we think, to the theory that before resorting to equity litigants should have the facts in issue in their contentions, decided by a court of law where a jury trial can be had as a matter of right. But when facts are not in dispute this reason ceases. In the instant case the defendants admit by demurrer (also by answer) that they are conducting and intend, threaten and are preparing to conduct a business in a place where the legislature of the state has declared that such use is a nuisance. The only real dispute is as to the law. Such being the case it would be incongruous to tell a litigant that he cannot be heard because he came in the wrong door.

(2) The interest and competency of the village corporation itself, as a party complainant is not disputed. Were it questioned the opinion of this court in *Houlton* vs. *Titcomb* 102 Me. 286.would afford a complete answer.

But under the demurrer the point is made that the bill fails to allege any vote of the corporation authorizing the suit. Such allegation is not necessary.

The bill was brought, signed and filed by solicitors who are officers of this court.

Their authority to represent the plaintiff is prima facie presumed. *Flint* vs. *Comly*, 95 Me., 255; *Steffe* vs. *Railroad*, 156 Mass. 263, 6 C. J. 631, 2 R. C. L. 980.

This rule applies to corporations as well as individual parties. *Boom Corporation* vs. *Lamson*, 16 Me. 224; *Osborn* vs. *U. S. Bank*, 9 Wheat 738, 6 C. J. 633.

The presumption is rebuttable. *Bridgton* vs. *Bennett*, 23 Me. 420. If seasonably and properly called for, authority must be proved. 2 R. C. L. 981. In a suit at law this point must be raised at the return term. *Prentiss* vs. *Kelley*, 41 Me. 440.

It cannot be availed of by demurrer, 6 C. J. 636; certainly not by general demurrer.

(3) The ordinance is set forth in full in the bill. Without specific allegation, of the want of which the defendants complain, the court takes notice of the provisions of the public act authorizing it, (15 R. C. L. 1066), and it will be "judicially regarded as emanating from that power that would have warranted its passage." Dillon Municipal Corporations Pg. 330.

(4)   In Section 2 we read that:   "The provisions of this act shall be carried out in such manner as will best promote the health, safety, morals and general welfare of the. community."

The defendants complain that the ordinance does not in terms declare, and that the bill does not specifically state how, or even that, camping grounds impair the public interest in any of the aforementioned aspects.   Such declaration would have been in accordance with good practice, but was not essential.   In any case the purpose is open to judicial inquiry.   36 Cyc 1111.

When the legislative department has constitutionally declared that a certain specified act or thing is a nuisance, a complaint, sufficient in other respects, is not demurrable because of its omission to allege the reasons why it is a nuisance.

### INTEREST OF ASSESSOR.

It is objected that J. W. Simpson who when the ordinance was adopted was an assessor and active in securing its passage was not disinterested.   The ordinance was adopted however not by the assessors, but by the voters of the municipality.   The same body may modify or repeal it.

That an interested party should be a judge is abhorrent to the law. Nothing bars such interested party from acting as advocate.

### EXISTING USE.

Section 6 of the Act is as follows:   "No ordinance or by-law adopted under the powers created by this act shall apply to structures existing at the time of the adoption of the ordinance nor to the then existing use of any building, but it shall apply to any alteration of a building to provide for its use for a purpose or in a manner substantially different from the use to which it was put before the alteration, and shall apply to a substantial change in the uses of a building when put to a new use without alteration."

Existing buildings and structures unless used for a purpose contravening the ordinance, are saved from the operation of the statute and must be excepted in the mandate of any injunction.

The defendants ingeniously maintain that before and at the time the law became effective, the buildings upon their land (toilets and a store) were used for the convenience of, or for dealing with tenants

of camping grounds conducted for private gain in what is now zone B, and that such use is excepted by the words "then existing use." But a reading of the whole section shows clearly that the words "then existing use" were designed to limit rather than to extend the exemption created by the preceding language.

If the legislature had intended to except, not buildings only, but land upon which there are no buildings, it would have employed more explicit phraseology.

### PRESUMPTION OF CONSTITUTIONALITY.

With the expediency, wisdom, justice and policy of the statute and ordinance this court is not concerned. The judgment of the legislative department of the government is as to these matters conclusive and final. *Corbin* vs. *Houlehan* 100 Me. 254; *State* vs. *Mayo* 106 Me. 68; *Dirken* vs. *Paper Co.* 110 Me. 389; *Green* vs. *Frazier* 253 U. S. 240, 64 L.Ed. 882.

We have carefully considered the important, though subordinate defences urged by counsel which go to the maintenance of the suit, or the construction of the Act. It is obvious however that their main reliance is upon the challenge of constitutionality.

The presumption of constitutionality has been adverted to. Federal and State Courts stress and emphasize it. We cite a few among many authorities:

"An act of the legislature is not to be declared void unless the violation of the constitution is so manifest as to leave no room for reasonable doubt." Legal Tender Cases 12 Wall 531.

"The constitutionality of a law is to be presumed until the contrary is shown beyond a reasonable doubt." *State* vs. *Pooler*, Me. 229; *Laughlin* vs. *Portland*, 111 Me. 486; *State* vs. *Webber*, 125 Me. 321.

The facts in this case, examined in the light of the thorough and exhaustive briefs of counsel do not in our opinion overcome the strong presumption of constitutionality. As neither evidence or argument relate to camping grounds maintained without profit the court has not considered this phase of the subject.

*Bill sustained.*
*Permanent injunction to issue.*