Lester L. BUCK et al.

v.

Ralph T. KILGORE et al.

Supreme Judicial Court of Maine.

Dec. 20, 1972.

———————◆———————

Richard A. Davis, Portland, for plaintiffs.

Wilson, Steinfeld, Murrell & Lane by Henry Steinfeld, Portland, for defendants.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK, and ARCHIBALD, JJ.

ARCHIBALD, Justice.

The instant case, which comes before the Law Court "on report" pursuant to M.R.C.P., Rule 72(b),[1] presents a single issue: Whether section 3–2–24.7 of the "Flammable Liquids" ordinance enacted by the City of South Portland which does not allow automobile service stations within 2,000 feet of places of public assembly is a valid exercise of the police power. We answer in the negative.

The parties having agreed, the single Justice below issued the following order:

"It is Ordered that this action be reported to the Law Court which Court shall, upon the complaint, stipulations, exhibits, and upon so much of the evidence adduced as is legally admissible, render such decision as the rights of the parties require." [2]

Since the case in its entirety is thus before us we have a dual obligation. We must, in addition to deciding the questions of law involved, evaluate the admissible evidence and draw therefrom such factual inferences and conclusions as are necessary to reach the "final decision" contemplated by Rule 72(b). Vachon v. Inhabitants of Lisbon, 295 A.2d 255 (Me. 1972). Otherwise stated, the Law Court is required to determine both the facts and their application to the legal principles involved.[3] See Dansky v. Kotimaki, 125 Me. 72, 130 A. 871 (1925).

---

1. "(b) Report on Agreed Facts. The court may, upon request of all parties appearing, report any action to the Law Court for determination where there is agreement as to all material facts, if it is of the opinion that any question of law is involved of sufficient importance or doubt to justify the same."

2. The parties agreed: "By agreement of the parties it was understood that the Justice before whom the hearing opened would make no rulings whatever in the case and that all rulings would be reserved for decision by the Supreme Judicial Court sitting as the Law Court.

   "By further agreement of the parties, it was stipulated that the Justice need not sit while the evidence was being taken out, but could absent himself, to be available upon call in the event that any disturbance in the courtroom required maintenance of order."

   When the record was completed the order quoted was issued. Since in non jury civil actions a single Justice of the Supreme Judicial Court has concurrent jurisdiction with Justices of the Superior Court (4 M.R.S.A. § 105), such a Justice, utilizing the procedures adopted here, would not be disqualified from participating in the ultimate determination of the case by the Law Court.

3. This procedure is consistent with Maine practice both before and after the adoption of the Maine Rules of Civil Procedure. See Cheney v. Richards, 130 Me. 288, 155 A. 642 (1931); Central Me. Power Co. v. Waterville Urban Renewal Authority, 281 A.2d 233 (Me.1971).

The plaintiffs are property owners in South Portland and the defendants were members of the South Portland City Council. Plaintiffs requested and were granted an exception to the City's zoning ordinance for the purpose of constructing an automobile service station. However, their subsequent application for a permit to handle flammable liquids was disapproved by the building inspector and the Chief of the Fire Department on the ground that, because of the proposed location, the station would be in violation of the proximity requirements of the flammable liquids ordinance.

The defendants sustained the building inspector and the plaintiffs subsequently sought Superior Court review pursuant to M.R.C.P., Rule 80B(a). The present "report" to the Law Court is an alternative method for obtaining appellate review of the acts of a governmental agency and is authorized by M.R.C.P., Rule 80B(d).[4]

The flammable liquids ordinance provides:

"3–2–7 FLAMMABLE LIQUIDS

3–2–7.1 No permit shall be granted or issued for the handling or use of flammable liquids by any firm or corporation until the plans, specifications, and location of the facilities for handling the flammable liquids shall have been approved by the chief officer of the Fire Department and he has made a recommendation therefor to the City Council. Such recommendation shall be in writing and shall briefly set forth the reasons for the recommendation or lack thereof."

"3–2–24.7 No automobile service station shall be allowed within 2,000 feet of schools, churches, theatres, or other places of public assembly."

■■ This ordinance was enacted by the City of South Portland pursuant to 30 M.

R.S.A. § 2151, which authorizes the adoption of police power ordinances for the purpose of "promoting the general welfare . . . and . . . providing for the public safety." Even though such police power ordinances frequently infringe or restrict the private use of property,

"[i]f the use is actually and substantially an injury of the public interest . . . a [regulation] . . . or ordinance . . . if itself reasonable and not merely arbitrary, and not violative of any constitutional limitation, is valid. It is not a deprivation of property which the Constitution forbids, but an enforcement of a condition subject to which the property is held."

Inhabitants of York Harbor v. Libby, 126 Me. 537, 540–541, 140 A. 382, 386 (1928). Thus, private property rights are not absolute but are "held subject to the implied condition that [they] shall not be used for any purpose that injures or impairs the public" interest. Id. at 540, 140 A. at 385.

■■ This Court has long recognized a presumption favoring the validity of municipal ordinances but has recognized that this presumption is not absolute. In Donahue v. City of Portland, 137 Me. 83, 86, 15 A.2d 287, 288 (1940), the Court held:

"As a general rule, it may be stated that there is a presumption in favor of the validity of an ordinance passed in pursuance of statutory authority.

'Every presumption is to be made in favor of the constitutionality of such an ordinance, and it will not be declared unconstitutional without clear and irrefragable evidence that it infringes the paramount law.' St. Johnsbury v. Aron, 103 Vt. 22, 151 A. 650."

Furthermore, our Court has held that if the ordinance on its face is reasonable, "the objecting party must produce evidence

4. "(d) Review by the Law Court. Unless by statute or otherwise the decision of the Superior Court is final, review by the Law Court shall be by appeal or report in accordance with these Rules of Civil Procedure, and no other method of appellate review shall be permitted."

to show that it is, in fact, unreasonable in its operation." State v. Small, 126 Me. 235, 237, 137 A. 398, 400 (1927). The ultimate test of reasonableness is whether the regulatory means adopted by a municipality bears any rational relationship to the evil to be corrected. *See* Leathers v. Burns, 251 Or. 206, 444 P.2d 1010, 1015 (1968).

The language of section 3-2-24.7 distinguishes "automobile service station[s]" from others handling or storing flammable liquids. Although all are required to obtain a permit to handle or store flammable liquids, only automobile service stations are automatically denied this permit if within 2,000 feet of "places of public assembly." Plaintiff contends that this distinction "bears no reasonable relationship to the public's health, safety and welfare."

The undisputed purpose of the South Portland ordinance is to minimize the danger to people and property from fires originating in automobile service stations. Given that as its purpose, it becomes clear that the validity of the ordinance rests upon a simple premise; namely, that automobile service stations pose a greater fire hazard than do other legitimate business enterprises which handle, use, or deal in the sale or storage of flammable liquids.

The plaintiffs, assuming the presumed validity of the ordinance, found themselves faced with the burden of proving by "clear and irrefragable evidence" the factual inaccuracy of the underlying premise upon which the ordinance rests. They met this burden by the evidence which they presented and which was undenied, uncontroverted, and unrebutted by the defendants. We conclude that the plaintiffs have demonstrated by the standard required that there is no rational relationship between the storage of flammable liquids in automobile service stations and the prevention of fire

in places of public assembly. In reaching this conclusion we feel it necessary to state only the ultimate facts in support thereof. Dansky v. Kotimaki, supra, 125 Me. at 73, 74, 130 A. at 872, 873.

The plaintiff introduced a map which, by applying a 2000' radius from known "schools, churches, theatres or other places of public assembly," clearly demonstrated that the enforcement of the proximity standard would, as a practical matter, effectively eliminate automobile service stations from South Portland.

An analysis of the fire insurance rates applicable to fourteen automobile service stations in South Portland produced an average rate of .326 dollars per hundred, while the average rate on seven other types of commercial structures was .469 dollars per hundred. We infer from this that the use, or storage, of flammable liquids does not adversely affect insurance rates and, a fortiori, the risk from fire.

■ The danger of loss by fire obviously bears a direct relationship to the cost of insurance reflected in the established rate. Since we are here concerned with the potential fire hazard inherent in automobile service stations, a comparison with other commercial establishments, in terms of the fire danger, becomes relevant. We, therefore, consider this evidence admissible.

Still recognizing the burden cast upon them, the plaintiffs utilized two expert witnesses, one a chemist from the American Petroleum Institute and the other an engineer representing the National Fire Protection Association. Their combined testimony leads to the ultimate factual conclusion that modern methods of delivery to and storage of petroleum products by service stations reduces the danger of fire to a point of practical insignificance.[5] The de-

5. On an actuarial basis, a service station has a fire expectancy of one fire in "about 200 years."

Modern methods make it "virtually impossible" for an underground storage tank to ignite and burn, even if the tank overflows while being filled.

A study of reports by 65,000 service stations over a period of five years produced evidence of only one fire which spread outside the station property.

fendants introduced no evidence in rebuttal.

■ The defendants did not present any testimony suggestive of the reasons which prompted the adoption of the ordinance. We do not know, for example, of any adverse experiences in South Portland with service station fires. Neither do we know, from the record, of any conditions, unique to South Portland, which might support a reasonable conclusion that there was a rational connection between such stations and the hazard of fire to places frequented by concentrations of people. Suffice it to say, a police power ordinance bears no absolute presumption of validity and is vulnerable if "clear and irrefragable" evidence, uncontradicted, establishes the lack of a rational relationship between the evil sought to be abated and the method adopted to do so.[6] Such is the case here.

The entry is:

Remanded to the Superior Court for entry of a judgment granting the plaintiffs the relief prayed for.

6. While we have chosen to decide this case on the basis that the adoption of section 3-2-24.7 of the flammable liquid ordinance cannot be supported as a valid exercise of the police power by the City of South Portland, we do not suggest that the adoption of the ordinance does not contravene the provisions of the Fourteenth Amendment of the United States Constitution, which prevents any person or class of persons being singled out as a special subject for regulation. *See* Boothby v. City of Westbrook, 138 Me. 117, 23 A.2d 316 (1941). It is clear that section 3-2-7.1 requires all firms to be licensed in their use of flammable liquids without regard to type of liquid, location of storage facilities, or the quantities to be stored, while section 3-2-24.7 singles out automobile service stations, without assigning any reason for so doing, for a special proximity restriction. Others, such as neighborhood grocery stores, welding and dry cleaning establishments, which are known to handle or use flammable liquids are not thus restricted.